UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FENG XUE; and CALCULUS TRADING
TECHNOLOGY, LLC,

                Plaintiffs,

-against-

STEWART KOENIG; and PRIME CONSULTING
INTERNATIONAL, LLC,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/22/2021

No. 19 Civ. 07630 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Defendants Stewart Koenig ("Koenig") and Prime Consulting International, LLC ("PCI") (collectively, "Defendants") assert counterclaims against Plaintiffs Feng Xue ("Xue") and Calculus Trading Technology LLC ("Calculus") (collectively, with Xue, "Plaintiffs") for breach of contract, a parallel declaratory judgment, promissory estoppel, and tortious interference with contract. Presently before the Court is Plaintiffs' Motion for Partial Judgment on the Pleadings—*i.e.*, Plaintiffs seek dismissal of Defendants' breach of contract (Count One) and declaratory judgment (Count Four) claims—pursuant to Fed. R. Civ. P. 12(c). (ECF No. 34.) For the following reasons, Plaintiffs' motion is GRANTED in part and DENIED in part.

## **BACKGROUND**

    The following facts, taken from the answer, counterclaims, and documents incorporated by reference into the counterclaims, are presumed true for the purposes of the motion for judgment on the pleadings.

    On August 15, 2019, Plaintiffs Calculus and Xue initiated a lawsuit against Defendants and asserted wage-related claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*

("FLSA") and New York and New Jersey Labor Laws, and a claim for quantum meruit regarding certain unpaid wages. (*See* Complaint ("Compl.") (ECF No. 1).) Subsequently, on October 25, 2019, Defendants filed their Answer, Affirmative Defenses, and Counterclaims asserting several causes of action against Plaintiffs sounding in tort and contract law. (Answer, Affirmative Defenses, and Counterclaims ("Counterclaims") (ECF No. 9).)

Both the Complaint and Counterclaims revolve around the obligations formed between Plaintiffs and Defendants in connection with certain services provided by Plaintiffs to Defendants' clients. Between approximately June 2005 and December 2017, Xue performed technology services work for third-party clients of PCI. Plaintiffs assert that an employment relationship was formed between Defendants and Plaintiffs giving rise to FLSA liability, whereas Defendants contend that they were not Plaintiffs' employer and that, instead, Plaintiffs breached contractual obligations to Defendants.

Defendants assert that four express contracts were entered into between PCI and Calculus, and that Plaintiffs breached three of these contracts by either (1) initiating FLSA claims in this litigation or (2) leveraging the specter of FLSA violations to take one of Defendants' clients.

**The Contract**

On or around June 2005, Defendant PCI and Plaintiff Calculus entered their first contract—referred to by Defendants as the "Contract"—which established that Xue would provide services to Defendants' clients—*i.e.*, "Calculus agreed to task Xue and/or others to perform technology services work to and for the benefit of one or more third party companies . . . identified and procured by PCI." (Counterclaims ¶ 4.) Apparently acting in accordance with the terms of the Contract, "PCI was entitled to, and did, receive payments by the Clients constituting consideration for the services that PCI provided by procuring the Clients and the work furnished by Calculus

and related services." (*Id.* ¶ 10.)  There is no allegation that this contract was breached in the Counterclaims and Defendants contend that, consistent with the Contract, "[a]t no time was Xue ever been [sic] an employee of PCI." (*Id.* ¶ 14.)

### The Noncompetition Agreement

During June 2005, the parties also entered into a second contract, referred to herein as the "Noncompetition Agreement." (*Id.* ¶ 49.)  The Noncompetition Agreement contained a restrictive covenant with the following terms:

> [Calculus] recognizes and agrees that, in the highly competitive business in which [PCI] is engaged in selling services and placing employees and/or consultants with its' [PCI/PCI's] Customer is of the greatest importance. [Calculus] and its' employees therefore agree that upon authorization of this agreement, [Calculus] and its employees will not make any offers or solicit any like services or business directly or indirectly to [PCI/PCI's] Customer or their assigns at any time during the term and one year after the termination of this Agreement. This agreement shall remain in force as long as [Consultant] is engaged in providing services to the PCI and [PCI's] Customer. This includes [Calculus's] employees / candidates, who have been introduced / submitted / interviewed for any open positions with [PCI/PCI's] Customer and its' related business units or assigns without the express permission of [PCI].

(*Id.* ¶ 49.)  Likewise, the Noncompetition Agreement contained a fairly boilerplate irreparable harm provision ostensibly entitling Defendants to injunctive or equitable relief in the event of a breach of the Noncompetition Agreement by Calculus.  (*Id.*)

In support of Plaintiffs' motion for judgment on the pleadings, Plaintiffs attached the entire Noncompetition Agreement.[1]  As quoted above, and as stated in the attached version of the

---

[1] Plaintiffs do not expressly incorporate by reference the terms of the Noncompetition Agreement.  By contrast, Defendants incorporated the terms of two other contracts at issue in this litigation.  Nonetheless, it is appropriate to consider the Noncompetition Agreement in the context of this motion because it is integral to Defendants' claim that the Noncompetition Agreement was breached.  *See, e.g.*, *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 68 (2d Cir. 2008); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (concluding that

3

Noncompetition Agreement produced by Plaintiffs, the term of the restrictive covenant is "during the term and one year after the termination of this Agreement." (Noncompetition Agreement (ECF No. 35[2]).) The Noncompetition Agreement is dated June 25, 2005 and is unsigned. (*Id.*)

Defendants contend that, in connection with the Noncompetition Agreement, "Xue repeatedly agreed upon behalf of Calculus to be bound by and perform under the [Agreement]" (Counterclaims ¶ 50), "Xue repeatedly represented to PCI that Calculus acknowledged that it was bound by the [Agreement] and clearly and unequivocally promised it would abide by and honor its terms" (*id.* ¶ 51), that PCI reasonably relied upon this representation (*id.* ¶¶ 52-53), and that PCI performed all obligations under the Noncompetition Agreement (*id.* ¶ 55). Defendants contend that, in or around January 26, 2018, Plaintiffs breached the terms of the Noncompetition Agreement by inducing PCI's client, Cowen, to terminate its contract with PCI and to hire Xue. (*Id.* ¶¶ 56-59.)

**The Consulting Agreement**

In or around July 2009, PCI and Calculus entered into their third contract, referred to by the parties as the "Consulting Agreement." (*Id.* ¶ 39.) Defendants expressly cite three provisions in that agreement, including an indemnification clause stating,

> INDEMNIFICATION. Vendor and or its Contractor(s) agree that it is not an employee of the Company or its Client, or is entitled to any benefits provided or rights guaranteed by Company or its Client, or by operation of law, to their respective employees, including but not limited to group insurance, liability insurance, disability insurance, paid vacation, sick leave or other leave, retirement plans, health plans, premium "overtime" pay, and the

---

referenced contracts were "integral" to complaint that put at issue whether those contracts authorized sale of certain artistic performances).

[2] The agreements were not attached as exhibits to Plaintiffs' motion papers. Instead, the agreements discussed herein were filed as a single document along with the Memorandum in Support of Plaintiffs' Motion to Dismiss. The Noncompetition Agreement discussed herein is on the eleventh (unnumbered) page of ECF No. 35.

>like. It is understood and agreed that Company will make no deductions from fees paid to Vendor for any PCI . . . entered into on June 25, 2005, federal or state taxes or FICA, FUTA, SDI, SUI. Vendor agrees that it is its responsibility to make required FICA, FUTA, SDI, SUI, Income tax withholdings or other payments related to its Contractor and provide Worker's compensation coverage or to make premium overtime payments, if applicable. Vendor shall indemnify and hold Company and its Client's harmless for any Worker's compensation, "overtime" claims, tax liability claims, or other claims brought or liabilities imposed against Company or its' Client by Contractors or any third party (including governmental bodies or courts), whether relating to Contractor's working visa status, or any other matters involving the acts or omissions of the Vendor or its Contractor(s). Vendor shall comply with the Fair Labor Standards Act, Occupational Safety and Health Act, Americans with Disabilities Act, Title VII of the Civil Rights Act, and any and all other federal, state and local laws, statutes, ordinances, rules regulations, codes, orders and/or programs including but not limited to identification and procurement of required permits, certificates, approvals and inspections, labor and employment obligations, affirmative action, wage and hour laws, prevailing wage and any other laws which are or subsequently become applicable to the Contractor. Vendor agrees to indemnify, defend and hold harmless Company or its Client from any breach by Vendor or its contractor(s).

(*Id.* ¶ 40.) The Consulting Agreement also contains a representation by Calculus that it "agrees to perform the services in this Agreement solely as an independent contractor" and that "this Agreement does not create any actual or apparent agency, partnership or relationship of employer and employee between the parties." (*Id.* ¶ 41.) Finally, Defendants note that the Consulting Agreement contains a standard arbitration provision.

Defendants incorporate the terms of the Consulting Agreement into their Counterclaims by reference (*id.* ¶ 39), and Plaintiffs attached the entire agreement to their motion papers (*see* ECF No. 35 at D000010-D000012 (the "Consulting Agreement")). The Consulting Agreement "shall commence on the date of this agreement [*i.e.*, July 1, 2009] and shall continue until June 30, 2010" and is terminable "by either party without cause at any time within 10 days prior written notice."

5

(Consulting Agreement ¶ 4.)  The Consulting Agreement also appears to be unsigned.  (*See* Consulting Agreement at D000012.)

Defendants contend that "Xue repeatedly agreed upon behalf of Calculus to be bound by and perform under and pursuant to the Consulting Agreement" (Counterclaims ¶ 43), "Xue repeatedly represented to PCI that Calculus acknowledged that it was bound by the Consulting Agreement and clearly and unequivocally promised it would abide by and honor its terms" (*id.* ¶ 44), PCI reasonably relied upon Xue's representation that Calculus would abide by and honor the terms of the Consulting Agreement (*id.* ¶¶ 45-46), and that PCI performed its obligations under that Agreement (*id.* ¶ 48).  Defendants do not directly state what provision of the Consulting Agreement was breached, but appear to contend that the bringing of the instant action in 2019 may have triggered liability under the Consulting Agreement.

### The Indemnification Agreement

"In or around December 2009," Calculus and PCI entered into their fourth contract, referred to herein as the "Indemnification Agreement."  (*Id.* ¶ 29.)  In relevant part, the Indemnification Agreement provides:

> CALCULAS [sic] TRADING TECHNOLOGY LLC (CALCULAS) [sic] agrees that it is not an employee of Prime Consulting International LLC (PCI) or its client, or is entitled to any benefits provided or rights guaranteed by PCI or its client, or by operation of law, to their respective employees, including but not limited to group insurance, liability insurance, disability insurance, paid vacation, sick leave or other leave, retirement plans, health plans, premium "overtime" pay, and the like. It is understood and agreed that PCI will make no deductions for fees paid to CALCULAS [sic] TRADING TECHNOLOGY LLC for any federal or state taxes or FICA, FUTA, SDI, SUI. CALCULAS [sic] agrees that it is its responsibility to make required FICA, FUTA, SDI, SUI, Income tax withholdings or other payments related to its Consultant Feng (Steve) Xue and provide Worker's compensation coverage or to make premium overtime payments, if applicable.

6

> CALCULAS [sic] shall indemnify and hold PCI harmless for CALCULAS [sic] related Worker's compensation, "overtime" claims, tax liability claims, or other claims brought or liabilities imposed against PCI by Consultants or any third party (including governmental bodies or courts), whether relating to Consultant's working visa status, or any other matters involving the acts or omissions of CALCULAS [sic].
>
> CALCULAS [sic] shall comply with the Fair Labor Standards Act, Occupational Safety and Health Act, Americans with Disabilities Act, Title VII of the Civil Rights Act, and any and all other federal, state and local laws, statutes, ordinances, rules regulations, codes, orders and/or programs including but not limited to identification and procurement of required permits, certificates, approvals and inspections, labor and employment obligations, affirmative action, wage and hour laws, prevailing wage and any other laws which are or subsequently become applicable to CALCULAS [sic].
>
> CALCULAS [sic] agrees to indemnify defend and hold harmless PCI from any breach by CALCULAS [sic] or its agents.

(*Id.* ¶ 32.) Separately, Defendants allege that "Xue repeatedly agreed upon behalf of Calculus to be bound by and perform under and pursuant to the Indemnity Agreement" (*id.* ¶ 33), "Xue repeatedly represented to PCI that Calculus acknowledged that it was bound by the Indemnity Agreement and clearly and unequivocally promised it would abide by and honor its terms" (*id.* ¶ 34), that PCI reasonably relied upon the representations by Xue that Calculus would honor the terms of the Indemnity Agreement (*id.* ¶ 35-36), and that PCI performed all obligations under the Indemnity Agreement (*id.* ¶ 38).

Defendants do not directly state what provision of the Indemnification Agreement was breached, but appear to contend that the bringing of the instant action in 2019 may have triggered liability under the Indemnity Agreement.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P.

7

12(c). The standard for analyzing a motion for judgment on the pleadings under Rule 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *see also* Fed. R. Civ. P. 12(b)(6). Likewise, "[a] motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Radiancy, Inc. v. Viatek Consumer Prod. Grp., Inc.*, 138 F. Supp. 3d 303, 313 (S.D.N.Y. 2014).

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the [counterclaim] "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A [counter]claim is facially plausible "when the [counterclaim] plaintiff pleads factual content that allows the court to draw the reasonable inference that the [counterclaim] defendant is liable for the misconduct alleged." *Id.* At the dismissal stage, a counterclaim need not "contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Purjes v. Plausteiner*, No. 15-CV-2515(VEC), 2016 WL 552959, at *7 (S.D.N.Y Feb. 10, 2016) (quoting *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014)). "At this stage, dismissal is appropriate only [if the movant] can prove no set of facts . . . that would entitle [the non-movant] to relief." *Id.* (quoting *Meyer v. JinkoSolar Holdings Co., Ltd.*, 761 F.3d 245, 249 (2d. Cir. 2014)). In evaluating a motion to dismiss, the Court must accept the well-pleaded allegations of the Complaint as true and draw all inferences in the non-moving party's favor. *LaFaro v. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009). "Although for the purpose of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678.

Defendants are entitled at the pleadings stage to "state as many separate claims or defenses as they have, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

## DISCUSSION

As is relevant to the instant motion, Defendants assert a single cause of action for breach of contract predicated upon Plaintiffs' alleged breaches of: (1) indemnification provisions contained in two distinct agreements—*i.e.*, the Consulting Agreement and the Indemnification Agreement—and (2) the restrictive covenants contained in the Noncompetition Agreement. Defendants also seek declaratory judgment that Calculus is obligated to indemnify PCI from and against all damages, including attorneys' fees and other legal expenses based upon Calculus' obligation to indemnify PCI under the aforementioned agreements. At bottom, Plaintiffs argue that the breach of contract and parallel declaratory judgment claims fail because each of the contracts is either unenforceable, violates the New York Statute of Frauds, or such claims are untimely. (*See* Plaintiffs' Memorandum in Support of Motion to Dismiss ("Pls' Mem") (ECF No. 35); Plaintiffs' Reply Memorandum of Law in Support of Motion to Dismiss ("Pls' Reply") (ECF No. 36).) In short, Defendants respond that it is premature to dismiss their claims while facts supporting the viability of their claims are still in dispute, and the Counterclaims contain sufficient factual allegations to survive a motion for judgment on the pleadings. (*See* Defendants' Memorandum of Law in Opposition to Plaintiffs' 12(c) Motion to Dismiss the Counterclaims ("Defs' Opp'n") (ECF No. 37).) The Court examines the arguments as they apply to each specific agreement in turn.

## I. The Indemnification Agreement

Plaintiffs raise two arguments in favor of dismissing the breach of contract and declaratory judgment claims with respect to the Indemnification Agreement. First, Plaintiffs argue that the Indemnification Agreement is void as against public policy. Second, Plaintiffs argue that even if

9

the contract were not void because Defendants are not employers for purposes of the FLSA, the only form of damages alleged in the Counterclaims is attorneys' fees, and such fees are not recoverable pursuant to the Indemnification Agreement. The Court concludes that it is premature to rule on either issue.

> **A.    When Determination of Voidness of Indemnification Agreement is Premature**

Plaintiffs argue that the breach of contract and declaratory judgment claim fail with respect to the Indemnification Agreement because the provision requiring Calculus to indemnify PCI for any "Calculus related Worker's compensation 'overtime' claims, tax liability claims, or other claims brought of liabilities imposed against PCI by Consultants or any third party" is void against public policy insofar as it "would permit employers to contract away their obligations under the FLSA." (Pls' Mem. at 5 (quoting *Gustafson*, 171 F. Supp. 2d at 328)). Defendants respond that this argument is premature because there is still a dispute as to whether Defendants were Plaintiff Xue's employer. (*See* Defs Opp'n at 7-11.) The Court agrees with Defendants.

The Second Circuit has held that "[t]here is no right of contribution or indemnification for employers found liable under the FLSA" because, among other things, "the text of the FLSA makes no provision for contribution or indemnification" and "the statute was designed to regulate the conduct of employers for the benefit of employees, and it cannot therefore be said that employers are members of the class for whose benefit the FLSA was enacted." *Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132*, 144 (2d Cir. 1999), *holding modified by Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003). "Subsequent decisions in this circuit have followed *Herman* and extended its reasoning to contractual indemnification claims[.]" *Garcia v. Cloister Apt Corp.*, No. 16 CV 5542-LTS, 2018 WL 1353274, at *2 (S.D.N.Y. Mar. 15, 2018); *see also Goodman v. Port Auth. of N.Y. and N.J.*, 850 F. Supp. 2d 363, 389 (S.D.N.Y. 2012) (granting motion to dismiss

cross-claim for contractual indemnification in FLSA case because permitting indemnification would circumvent purposes of FLSA); *Gustafson v. Bell Atlantic Corp.*, 171 F. Supp. 2d 311, 328 (S.D.N.Y. 2001).

If the Court concludes that Defendants were Xue's employer for purposes of the FLSA, then the Indemnification Agreement is void as against public policy pursuant to the aforementioned authorities. Nonetheless, at present, the parties dispute whether Defendants are Xue's employer. Plaintiffs identify a single case where a court, without addressing whether there was a dispute over employer status, granted a motion to dismiss a similar counterclaim – *Goodman*, 850 F. Supp. 2d at 389. However, the majority trend among courts that have directly addressed the propriety of granting a motion to dismiss a counterclaim where the parties dispute employer status runs counter to that case. *See, e.g.*, *Patel v. 7-Eleven, Inc.*, No. CV 17-11414-NMG, 2019 WL 4248072, at *2 (D. Mass. Sept. 6, 2019) ("[I]t is premature to dismiss defendant's breach of contract counterclaim when defendants have alleged sufficient facts to state a claim and the underlying dispute (whether plaintiffs are independent contractors or employees) requires some factual inquiry into the subject employment relationships."); *Hose v. Henry Indus., Inc.*, No. 4:15-CV-01913-JAR, 2017 WL 386545, at *5 (E.D. Mo. Jan. 27, 2017) ("Given the parties' disagreement as to the nature of their relationship, the Court will need to undertake a fact-intensive inquiry into the 'economic reality' of their relationship before it will be able to determine whether Defendant's indemnification counterclaim is preempted by the FLSA."); *Brown v. Club Assist Rd. Serv. U.S., Inc.*, No. 12-CV-5710, 2015 WL 13650775, at *5 (N.D. Ill. Mar. 13, 2015) (denying motion to dismiss contractual indemnification claim as preempted by the FLSA because "Defendant alleges that it is not Plaintiffs' employer, the Court will not strike the third-party complaint on the basis of Plaintiffs' (disputed) contention that Defendant qualifies as such.");

*Costello v. BeavEx Inc.*, No. 12 C 7843, 2013 WL 2156052, at *4 (N.D. Ill. May 17, 2013) (denying motion to dismiss contractual indemnification claim as against public policy relating to analogous Illinois wage protection law where defendant contended he was not plaintiff's employer); *Dobbins v. Scriptfleet, Inc.*, No. 8:11–cv–1923–T–24–AEP, 2012 WL 2282560 (M.D. Fla. June 18, 2012) (denying plaintiff's motion to dismiss contractual indemnification counterclaim because the FLSA does not apply to independent contractors and counterclaim was based upon theory that the plaintiff was an independent contractor, and thus, that her FLSA claim would fail); *Spellman v. Am. Eagle Express, Inc.*, 680 F. Supp. 2d 188, 189–92 (D.D.C. 2010) (where defendant argued that the FLSA did not apply because plaintiffs were independent contractors, denying motion to dismiss contractual indemnification counterclaim, as the Court could not "say at this juncture that the counterclaim [was] preempted by, or contrary to the policy of, the FLSA").

This Court agrees with the aforementioned authorities that it is premature to conclude that a contractual indemnification claim for harms arising from a purported FLSA violation is void against public policy where counterclaim plaintiffs allege that they are not the counterclaim defendants' employer. Accordingly, the Court concludes that it is premature to deem Defendants' Counterclaims void.

### B. Whether Defendants Have Adequately Alleged Damages

Plaintiffs argue that judgment on the pleadings should be granted because the Indemnification Agreement does not provide for attorneys' fees as damages and the only ostensible harm alleged by Defendants is attorneys' fees in defending the instant suit. (Pls' Mem. at 7.) This is so because (1) the Indemnification Agreement is only enforceable if the Court determines that Defendants did not employ Xue and Plaintiffs' FLSA claim fails, and (2) "if Plaintiff Xue's claim fails, there will be no damages award for anyone to indemnify" other than attorneys' fees. (*Id.* at

6.) Defendants failed to respond to this argument. The Court agrees that, upon reviewing the Counterclaims and Defendants' Opposition, they have not alleged any plausible damages under the Indemnification Agreement other than attorneys' fees. Accordingly, whether Defendants have adequately pled a breach of contract claim turns upon whether attorneys' fees are recoverable under the Indemnification Agreement.

Under New York law, a contract assuming the obligation to indemnify the counterparty "must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491, 548 N.E.2d 903, 905 (1989). As described in the *Hooper Assocs., Ltd.*, the New York Court of Appeals recognized that this strict construction applies with particular force against obligations to pay attorneys' fees:

> Inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees **incurred in litigation between them** is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise.

74 N.Y.2d at 492 (emphasis added). From this language, it is clear that "in contexts in which contracting parties could have anticipated that they would be subject to third-party claims, courts apply a presumption against concluding that indemnification clauses cover **litigation costs incurred in the course of resolving non-third-party claims**." *Goshawk Dedicated Ltd. v. Bank of New York*, No. 06 CIV. 13758 (MHD), 2010 WL 1029547, at *7 (S.D.N.Y. Mar. 15, 2010) (emphasis added).

Here, the Court agrees that the Indemnification Agreement anticipates that contracting parties would indemnify against harms incurred in connection with third parties' claims rather than suits between the contracting parties – *i.e.*, the Indemnification Agreement requires Plaintiff Calculus to "hold PCI harmless for CALCULUS related Worker's compensation, 'overtime'

13

claims, tax liability claims, **or other claims brought or liabilities imposed against PCI by Consultants or any third party** (including governmental bodies or courts), whether relating to Consultant's working visa status, or any other matters involving the acts or omissions of Calculus." (Indemnification Agreement (emphasis added).)  Accordingly, the Court is inclined to conclude that the Indemnification Agreement does not make "unmistakably clear" that Calculus is obligated to assume attorneys' fees associated with claims asserted by the contracting party, *i.e.*, Calculus.

Nonetheless, Plaintiffs do not specifically address whether the Indemnification Agreement provides for attorneys' fees with respect to third-party claims, and the Court does not address this issue *sua sponte* without the benefit of briefing on the matter.  The contracting parties to the Indemnification Agreement are Calculus and PCI, and the FLSA claims asserted here are brought by an ostensible third-party to the agreement, *i.e.*, Xue.  Indeed, the Complaint asserts that PCI violated the FLSA and relevant state labor laws because "Mr. Xue was not paid the minimum wage for his work in the last 3 months of 2017," "Mr. Xue was not paid overtime premiums when he worked in excess of 40 hours per week," and "was not paid his earned wages and not given proper notices under the Wage Theft Prevention Act."  (Compl. ¶¶ 20 & 22.)  Accordingly, the "presumption against concluding that indemnification clauses cover litigation costs incurred in the course of resolving non-third-party claims" does not resolve the recoverability of attorneys' fees for claims asserted by Plaintiff Xue.  *Goshawk Dedicated Ltd.*, 2010 WL 1029547, at *7.

Plaintiffs can, of course, raise arguments later in this litigation that the recoverability of attorneys' fees for claims brought by third parties is outside of the scope of the Indemnification Agreement.  But, as that argument was not presented to this Court, the Court leaves that issue to be addressed on another day.

Plaintiffs' motion for judgment on the pleadings with respect to Defendants' claims for breach of contract and declaratory judgment concerning the Indemnification Agreement is denied.

## II. Whether Defendants' Noncompetition Agreement is Unenforceable Under the Statute of Frauds

Plaintiffs argue that the Noncompetition Agreement is unenforceable under the Statute of Frauds, New York General Obligations Law Section 5-701(a)(1), because there is an absence of an actual signature on the Noncompetition Agreement. (Pls' Mem. at 8.) Defendants do not dispute that the Noncompetition Agreement cannot be performed within one-year under its terms (nor could they: the restrictive covenant, on its face, applies for over one year—*i.e.*, it binds the Plaintiffs throughout the term of Plaintiffs' engagement as a consultant and for one year after his engagement is terminated). Nor do they dispute that the Noncompetition Agreement is unsigned. Instead, they argue that the contract does not violate the Statute of Frauds because "the Counterclaim contains more than sufficient allegations that, even though the [Noncompetition Agreement] was unsigned, the parties' actions manifested their acceptance of its terms" and "discovery is on-going and the question of part performance is open." (Defs' Opp'n at 14-15.)

Defendants' argument is mistaken because the doctrine of part performance as an exception to the Statute of Frauds only applies in the context of contracts concerning real property. The New York Court of Appeals has only applied the doctrine of part performance to conveyances and contracts for real property which are required to be in writing, *i.e.*, contracts governed by New York General Obligations Law Section 5-703. *See Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Grp. PLC*, 93 N.Y.2d 229, 235, 711 N.E.2d 953, 956 (1999). This makes sense because the doctrine is directly codified in New York General Obligations Law Section 5-703(4), which states that "[n]othing contained in this section abridges the powers of courts of equity to compel the specific performance of agreements in cases of part performance."

15

By contrast, there is no equitable exception codified in General Obligations Law Section 5-701 and New York courts have rejected attempts to extend the doctrine of part performance to contracts governed by New York Section 5-701, such as the instant contract. The New York Court of Appeals clarified that the Second Circuit was initially mistaken insofar as it believed that the New York recognized a judicially-created part performance exception to Section 5-701 and expressly stated that "we have not in fact adopted that proposition." *Messner Vetere Berger McNamee Schmetterer Euro RSCG*, 93 N.Y.2d at 234, n. 1. Subsequently, intermediate courts in New York have uniformly rejected attempts to expand the doctrine of part performance to contracts governed under Section 5-701. *See, e.g.*, *Gural v. Drasner*, 114 A.D.3d 25, 977 N.Y.S.2d 218 (1st Dep't 2013) (stating that the law simply does not provide for or permit a part performance exception for oral contracts other than those to which GOL § 5-703 applies); *American Tower Asset Sub, LLC v. Buffalo-Lake Erie Wireless Systems Co., LLC*, 104 A.D.3d 1212, 961 N.Y.S.2d 667 (4th Dep't 2013) (noting that the doctrine of part performance does not apply to actions governed by the general Statute of Frauds); *Valentino v. Davis*, 270 A.D.2d 635, 703 N.Y.S.2d 609 (3d Dep't 2000) (holding that the doctrine of part performance is not recognized to take an oral contract to board and breed horses that was not to be performed within one year out of the Statute of Frauds). Likewise, the Second Circuit recognized the limited applicability of the doctrine of part performance. *Belotz v. Jefferies & Co., Inc.*, 213 F.3d 625 (2d Cir.2000) ("Section 5–701(a)(10) does not expressly provide a part performance exception, and the New York Court of Appeals has firmly stated that there is no such exception.").

Here, the unsigned Noncompetition Agreement is governed by Section 5-701 and that Section does not provide for a part performance exception. Likewise, Defendants have not pointed to any document "signed with intent to authenticate the information contained therein and that

16

such information does evidence the terms of the [alleged] contract," *United Res. Recovery Corp. v. Ramko Venture Mgmt., Inc.*, 584 F. Supp. 2d 645, 654 (S.D.N.Y. 2008). Defendants instead make a conclusory allegation that Plaintiffs acknowledged to PCI that Calculus would be bound to the terms of the Noncompetition Agreement, without clarifying whether that acknowledgment was memorialized in a physical or electronic medium.

Though Defendants do not clearly invoke the doctrine of promissory estoppel, that doctrine is inapplicable here. Defendants failed to allege "unconscionable injury and loss" and thus cannot adequately plead equitable estoppel. Instead, Defendants assert that damages allegedly arising from breach of the Noncompetition Agreement consist of "loss of a placement fee and other lost profits." Such damages do not qualify as unconscionable injury and loss as a matter of law. *Wolet Capital Corp. v. Walmart, Inc.*, 18-CV-12380 (LJL), 2021 WL 242297, at * 13 (S.D.N.Y. Jan. 25, 2021) (collecting cases in support of the proposition that "courts have consistently rejected promissory estoppel claims when the alleged injury consists of lost profits, lost fees, foregone business opportunities or damage to business reputation").

Accordingly, Plaintiffs' motion for judgment on the pleadings is granted to the extent it seeks dismissal of Defendants' Breach of Contract and Declaratory Judgment claims predicated upon the Noncompetition Agreement. Defendants' Breach of Contract and Declaratory Judgment claims are dismissed with prejudice to the extent they are predicated upon the unenforceable Noncompetition Agreement.

### III. Whether Breach of Contract and Declaratory Judgment Claims Relating to Consulting Agreement are Untimely

Plaintiffs argue that claims relating to the Consulting Agreement should be dismissed because "[t]he Consulting Agreement is not only unsigned, but by its own terms it expired on June 30, 2010 and thus if there was a breach, the statute of limitations has long expired." (Pls' Mem.

at 8.³) Defendants respond that their breach of contract and declaratory judgment claims are well-pled because the Counterclaims sufficiently allege that the parties evidenced their mutual assent to a new contract on the same terms as the prior one after the expiration of the Consulting Agreement. (*See* Defs' Opp'n at 16-17.)

Pursuant to New York Civil Practice Law and Rules ("CPLR") § 213(2), "[a] cause of action alleging breach of contract is governed by a six-year statute of limitations . . . and accrues at the time of the alleged breach." *CDx Lab'ys, Inc. v. Zila, Inc.*, 162 A.D.3d 972, 973, 80 N.Y.S.3d 382, 383 (2d Dep't 2018) (citing *Hahn Automotive Warehouse, Inc. v. American Zurich Ins. Co.*, 18 N.Y.3d 765, 944 N.Y.S.2d 742 (2012)). To the extent that Defendants alleged that the breach of contract occurred over six-years prior to initiation of the Counterclaims on October 25, 2019—*i.e.*, on or before October 24, 2013—it would be time barred. Defendants do not clearly identify what provisions of the Consulting Agreement were breached, but it appears from Defendants' Opposition papers that they are asserting that Plaintiffs breached the indemnification provisions contained in the Consulting Agreement. (See Defs' Opp'n at 2-3 (focusing upon representations within Indemnification Provision that Xue was not an employee of PCI).) Assuming arguendo that the claim accrued upon the filing of Plaintiffs' Complaint, it would not be time-barred under CPLR § 213(2).

Though Plaintiffs' argument that the statute of limitations has expired is clumsily framed, it is fairly clear that Plaintiffs intended to argue that Defendants have not adequately pled a breach of contract claim because the obligations contained in the Consulting Agreement have long since expired. Defendants concede that the express terms of the written Consulting Agreement establish

---

³ Presumably, Plaintiffs do not argue that the Consulting Agreement is unenforceable pursuant to the Statute of Frauds because the term of the Consulting Agreement is one-year.

a term that expired on June 30, 2010 in their Opposition Memorandum, and shift their theory of the case towards an implied in fact contract.  More specifically, they identify cases in which courts have found an implied in fact contract survived the expiration date of a written agreement because the parties continued to perform under the agreement.

In order to plead an implied in fact contract, a party must allege the same elements of an express contract – *i.e.*, "consideration, mutual assent, legal capacity and legal subject matter." *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 93–94, 699 N.Y.S.2d 716, 721 N.E.2d 966 (1999).  With respect to mutual assent, "[t]he conduct of a party may manifest assent if the party intends to engage in such conduct and knows that such conduct gives rise to an inference of assent." *Id.* at 94.

In sum, the only assertion potentially bearing upon mutual assent to an implied in fact contract contained in the Counterclaims is the allegations that "Xue repeatedly represented that Calculus acknowledged that it was bound by the Consulting Agreement and clearly and unequivocally promised it would abide by and honor its terms."  (Counterclaim ¶ 45.)  This sort of conclusory allegation has been deemed insufficient to support the existence of an implied contract.  *Outrigger Const. Co. v. Bank Leumi Tr. Co. of New York*, 240 A.D.2d 382, 384, 658 N.Y.S.2d 394, 396 (2d Dep't 1997) ("The plaintiff's allegation that the bank requested it to continue working on the project based on an 'agreed price and reasonable value', even if undisputed, is too vague and uncertain to constitute an enforceable contract").

Accordingly, the portion of Plaintiffs' motion for judgment on the pleadings seeking dismissal of Defendants' breach of contract and declaratory judgment claims with respect to the Consulting Agreement is granted.  Defendants' breach of contract and declaratory judgment claim with respect to the Consulting Agreement is dismissed without prejudice and Defendants are

granted leave to plead sufficient details concerning the existence of an implied in fact consulting agreement, to support their claims.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for judgment on the pleadings with respect to Defendants' Counterclaims is DENIED in part and GRANTED in part: (1) Defendants' First and Fourth Counterclaims are dismissed with prejudice to the extent they are predicated upon the Noncompetition Agreement; and (2) Defendants' First and Fourth Counterclaims are dismissed without prejudice to the extent they are predicated upon the Consulting Agreement. Plaintiffs' motion is DENIED as premature to the extent the First and Fourth Counterclaims are predicated upon the Indemnification Agreement.

Defendants are granted leave to file Amended Counterclaims in conformance with the above on or before April 12, 2021. In the event that Defendants file Amended Counterclaims, Plaintiffs shall answer or seek a pre-motion conference on any potential nonfrivolous and non-repetitive motion to dismiss by May 12, 2021.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 34.

Dated:   March 22, 2021                                          SO ORDERED:
         White Plains, New York

                                                                 _____
                                                                 NELSON S. ROMÁN
                                                                 United States District Judge