David Abrams, Attorney at Law
305 Broadway Suite 601
New York, New York 10007
Tel. 212-897-5821 dnabrams@gmail.com

United States District Court
Southern District of New York
_____
                                           )
Feng Xue & Calculus Trading                )
Technology LLC                             )
                                           )
                Plaintiff,                 )
                                           )
        - against -                        )    Case No. 19cv7630(NSR)
                                           )
Stewart Koenig &                           )
Prime Consulting International LLC,        )
                                           )
                Defendants.                )
_____)

**Memorandum of Law in Support of Motion to Dismiss**

  Plaintiffs Feng Xue and Calculus Trading Technology LLC ("Plaintiff") respectfully submit this Memorandum of Law in support of their motion to dismiss.

**Preliminary Statement**

  This matter is a claim for unpaid wages. Defendant has attempted to complicate matters by alleging various counterclaims all of which are baseless. In its earlier Decision, the Court dismissed part of the counterclaims with prejudice and part without prejudice.

  Defendant has now filed an Amended set of Counterclaims which fail to correct the problems raised by the Court's earlier decision. Further, the remainder of the Counterclaims are defective for other reasons. For these reasons, the counterclaims

should be dismissed with the exception of one aspect of Defendants' Count I (and possibly Count IV) inasmuch as the Court has decided to defer decision on that issue.

## Facts & Procedural History

Plaintiff performed services in association with the Defendants for many years as an information technology worker. (Complaint Para. 9; Def. Counterclaims Para. 4-5). The Defendants essentially operated as a staffing agency which placed the Plaintiff with a third party company known as Cowen. (*Id.*, Defendant Counterclaims Para. 56) The arrangement worked as follows: Plaintiff worked directly for Cowen and his earnings went from Cowen to Defendant Prime Consulting to Plaintiff Calculus Trading and finally to Plaintiff Xue. Thus, Plaintiff was paid "corp to corp" for his services. (Complaint Para. 9-11; Def. Counterclaims Para. 4-6).

Plaintiff has now brought suit alleging, among other things, that (1) Defendants were employers and he was an employee within the meaning of the Fair Labor Standards Act (and New York Labor Law); (2) Defendants violated the FLSA by failing to pay minimum wages as required by law. (Complaint Para. 18-21)

Defendants have asserted counterclaims based on three contracts (two of which were never signed): A non-competition agreement; a consulting agreement; and an indemnity agreement. These agreements are quoted extensively by the Defendants' Counterclaims and effectively incorporated into the Pleadings. (*See* Def. Counterclaims Para. 32-33; 40-43; 49-50). Copies are attached hereto.

By Order dated March 22, 2021, the Court dismissed some of Defendants' Counterclaims, some with prejudice and some without. (Docket No. 66). Defendants have filed revised Counterclaims and Plaintiffs now move again to dismiss.

**Argument**

I.    **The Consulting Agreement is Unenforceable**

    A.    **The Consulting Agreement is Within the Statute of Frauds**

The unsigned Consulting Agreement contains a non-solicitation clause which is for the term of the agreement plus one year.  *See* Consulting Agreement Para. 9.  Thus, it is invalid for the same reasons as expressed in the Court's decision of March 2021.  *See* Docket 66 pages 15-16.

    B.    **Defendant Has Not Corrected the Pleading Deficiencies**

In its original Counterclaims, Defendant alleged that Plaintiff "repeatedly agreed . . . to be bound by and perform under the Consulting Agreement."  (Def. Answer Par. 43). In its decision of March 22, 2021, the Court correctly held that that this type of conclusory allegation is insufficient.  (Docket 66, p. 19).  Defendant's revised allegation states that "[the Parties] agreed that the Consulting Agreement would continue to remain in effect for so long as [the Parties] continued to do business with one another." (Amended Answer Para. 44).

Significantly, the Amended Answer says next to nothing about what Plaintiff specifically said and when in order to manifest assent with such agreement.  Although admittedly the Amended Answer alleges (in conclusory terms) that the parties did business after 2010 pursuant to the terms and conditions of the Consulting Agreement, there are no specific allegations whatsoever which show or imply that the parties ever worked under this particular agreement and not some other understanding.  Accordingly, the Amended allegations are insufficient.

## II. Defendant's Tortious Interference Claim Should be Dismissed

### A. Defendant Has Failed to Allege a Breach of Contract

Count Two of the Defendant's Counterclaims alleges that Plaintiff made certain statements to the Defendant's customer which resulted in the Defendant terminating its contract with the Defendant.  *See* Amended Answer Para. 87 et seq.  Defendant alleges only in conclusory terms that this termination was a "breach" of the contract.  *See* Amended Complaint Para. 95.  Under New York law, tortious interference with contract requires "actual breach of the contract."  *Lama Holding v. Smith Barney*, 88 N.Y.2d 413, 424 (1996).  Here, such a breach is alleged only in conclusory terms and therefore the allegation is insufficient.

### B. Defendant's Allegations Establish Economic Justification

A claim for tortious interference with contract will fail if the Defendant was acting in his or her economic interest.  *See e.g. Foster v. Churchill*, 87 N.Y.2d 744, 750 (1996) ("[E]conomic interest is a defense to an action for tortious interference with a contract unless there is a showing of malice or illegality.").

Here, the Defendant has affirmatively alleged that Plaintiff's alleged interference was perpetrated, in part to "facilitate [Plaintiff] becoming employed by Cowen [the third party]"  Amended Answer Para. 70.  Moreover, according to the Defendants, the supposed misbehavior of Plaintiff merely consisted of his expressing his opinion about the relationship between the parties.  *See* Amended Answer Para. 68.  While it is true that Defendants also allege that Plaintiff was motivated in part "in order to cause financial harm to [Defendant]," Amended Answer Para. 70, this allegation is purely conclusory and is not supported by any concrete allegations.  Thus, Defendants' own pleadings

establish the defense of economic justification and therefore the tortious interference claim should be dismissed.  *See Levine v. Atricure, Inc.*, 584 F.Supp. 471, 474-475 (S.D.N.Y. 2009) (noting that a party can "plead itself out of court" by alleging facts which establish a defense).

### III.     Defendant's Promissory Estoppel Claims Should be Dismissed

The Defendant's third count, Promissory Estoppel, is essentially a re-hashing of Count I except framed in terms of promissory estoppel.  This claim fails for three reasons.  First, promissory estoppel requires a "clear and unambiguous promise." *Castelotti v. Free*, 138 A.D.3d 198, 204 (1st Dept. 1998).  Defendant has alleged such promises only in purely conclusory terms.

Second, "[i]f a contract is barred by the statute of frauds, a promissory estoppel claim is viable in the limited set of circumstances where *unconscionable injury* results from the reliance placed on the alleged promise." *Id.* (emphasis added).  As the Court pointed out in its earlier decision, the Defendant has failed to allege such "unconscionable injury."  *See* Docket 66 at p. 17.

Finally, this Count is duplicative of Defendants' breach of contract claims.  *See Celle v. Barclays Bank PLC*, 48 A.D.3d 301, 303 (1st Dept. 2008) ("In the absence of a duty independent of the agreement, the promissory estoppel claim was duplicative of the breach of contract claim").  Here, Defendant has alleged no such independent duty.

### IV.     Defendants' Declaratory Judgment Claims Should be Dismissed

Finally, Defendants' declaratory judgment claim should be dismissed to the extent it is predicated on the unenforceable Consulting Agreement.  *See* Docket No. 66 at p. 19-20.  . *See also BGW Development Corp. v. Mount Kisco Lodge*, 247 A.D.2d 565, 568

(1998) ("[a] cause of action for a declaratory judgment is unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action, such as breach of contract") (citation omitted). For this reason, it would be appropriate to dismiss Count IV in its entirety.

### Conclusion

For the foregoing reasons, Plaintiff respectfully submits that all of the Defendant's counterclaims should be dismissed with the exception of Count I (and possibly Count IV) and only as to the Indemnity Agreement inasmuch as the Court has deferred decision on that issue.

/s/ David Abrams

David Abrams, Attorney at Law
Attorney for Plaintiff

305 Broadway Suite 601
New York, NY 10007
Tel. 212-897-5821
dnabrams@gmail.com

Dated: July 20, 2021
New York, New York

Prime Consulting International LLC  
7 Pine Hill Court (Suite 100)  
Briar Cliff manor NY 10510  

December 23 2009

Letter of indemnification:

- CALCULAS TRADING TECHNOLOGY LLC (CALCULAS) agrees that it is not an employee of Prime Consulting International LLC (PCI) or its client, or is entitled to any benefits provided or rights guaranteed by PCI or its client, or by operation of law, to their respective employees, including but not limited to group insurance, liability insurance, disability insurance, paid vacation, sick leave or other leave, retirement plans, health plans, premium "overtime" pay, and the like. It is understood and agreed that PCI will make no deductions for fees paid to CALCULAS TRADING TECHNOLOGY LLC for any federal or state taxes or FICA, FUTA, SDI, SUI. CALCULAS agrees that it is its responsibility to make required FICA, FUTA, SDI, SUI, Income tax withholdings or other payments related to its Consultant Feng (Steve) Xue and provide Worker's compensation coverage or to make premium overtime payments, if applicable.

- CALCULAS shall indemnify and hold PCI harmless for CALCULAS related Worker's compensation, "overtime" claims, tax liability claims, or other claims brought or liabilities imposed against PCI by Consultants or any third party (including governmental bodies or courts), whether relating to Consultant's working visa status, or any other matters involving the acts or omissions of CALCULAS.

- CALCULAS shall comply with the Fair Labor Standards Act, Occupational Safety and Health Act, Americans with Disabilities Act, Title VII of the Civil Rights Act, and any and all other federal, state and local laws, statutes, ordinances, rules regulations, codes, orders and/or programs including but not limited to identification and procurement of required permits, certificates, approvals and inspections, labor and employment obligations, affirmative action, wage and hour laws, prevailing wage and any other laws which are or subsequently become applicable to CALCULAS.

- CALCULAS agrees to indemnify defend and hold harmless PCI from any breach by CALCULAS or its agents.

Feng (Steve) Xue

*feng xue*

Calculus Trading Technology LLC

## NON-COMPETITION AGREEMENT

This agreement is entered on this date June 25, 2005, by and between: Calculus Trading Technology LLC (the "Consultant") a NJ Limited Liability Company, whose, **EID is** 20-3191172, and address is: 202 W First St, Edison, NJ  08820, and **Prime Consulting International LLC.**, ("Client"), a New York corporation whose **EID** is 9000674678 with a principal place of business **at 7 Pine Hill Court, (Suite 100) Briarcliff Manor, NY 10510.**

WHEREAS, Consultant wishes to provide consulting services to Client, and understands and agrees to the promises and commitments made herein.

NOW, THEREFORE, in consideration of the promises and the mutual covenants herein set forth and other good and valuable consideration, receipt and sufficiency of which are hereby acknowledged, the parties hereto, each intending to be legally bound hereby, agree as follows:

<u>Non-Competition Covenants.</u> Consultant recognizes and agrees that, in the highly competitive business in which Client is engaged in selling services and placing employees and/or consultants with its' Client/Client's Customer is of the greatest importance. Consultant and its' employees therefore agree that upon authorization of this agreement, Consultant and its employees will not make any offers or solicit any like services or business directly or indirectly to Client/Client's Customer or their assigns at any time during the term and one year after the termination of this Agreement. This agreement shall remain in force as long as Consultant is engaged in providing services to the Client and the Client's Customer. This includes Consultant(s) employees/candidates, who have been introduced/submitted/interviewed for any open positions with Client/Client's Customer and its' related business units or assigns without the express permission of the Client.

<u>Remedy</u>. Consultant acknowledges that Client has expended significant resources in the development of business relationships with its Customer. Accordingly, a breach by Consultant of any provision of this Agreement, will cause Client great and irreparable injury and damage. Consultant acknowledges that Client shall be entitled, in addition to any contractual rights or other remedies it may have at law, to the remedies of injunction and other equitable relief for a breach by Consultant of any of the provisions of this Agreement.


For Client:                              For Consultant:


_____          _____
**Name: Stewart Koenig**            **Name:**
**Title:   Managing Director**       **Title:**

# Prime Consulting International LLC
# Consulting Agreement

THIS AGREEMENT, made effective as of **July 1, 2009** by and between **Prime Consulting International LLC,** (the "Company"), a New York Corporation with offices with a principal place of business **at 7 Pine Hill Court, (Suite 100) Briarcliff Manor, NY 10510.**
and **CALCULUS TRADING TECHNOLOGY LLC** (the "Vendor"); 202 W First St, Edison, NJ 08820,

**WITNESSETH:**

**WHEREAS,** Vendor and Company wish to enter into this Agreement whereby Vendor shall provide Company with individuals ("Contractor(s)") to provide certain services as set forth in an agreement between Vendor and Contractor(s);

**THEREFORE,** in consideration of the mutual promises and covenants herein, the parties agree as follows:

1. **SERVICES TO BE PERFORMED.** Company hereby engages Vendor to provide Contractor(s) to render services as set forth in a List of Services and Payment in Exhibit A (collectively, the "Services"), over the term of the period set forth therein. While it is the intent of this Agreement that the mutual convenience of the parties be served, it is understood that Vendor and Contractor shall not be subject to the direction or supervision of Company with respect to the procedures followed in the performance of this Agreement or the Services by Contractor.

2. **COMPENSATION**   During the Term, Company shall pay Vendor for the Services provided by Contractors pursuant to the fee and payment schedule set forth in the List of Services and Payment in Exhibit A and all other terms and conditions set forth herein.

3. **TAXES AND WITHHOLDING.**   Company shall not be liable for workers' compensation, unemployment insurance, employers' liability, employer's FICA, social security, withholding tax, or other taxes or withholding for or on behalf of Vendor or Contractor or any other person, persons, firms or corporations consulted or employed by Vendor or Contractor in performing this Agreement or the Services under the Contractor Agreement.  It is understood, however, that in the event that Company is found liable for workers' compensation, unemployment insurance, employers' liability, employer's FICA, social security, withholding taxes or other taxes, or employer's liability of a similar nature, Company shall have the right to recover an equivalent amount, including interest or penalties paid in connection therewith, from Vendor.

4. **TERM AND TERMINATION.** The term of this Agreement shall commence on the date of this Agreement and shall continue until June 30, 2010 (the "Term").  This Agreement may be terminated by either party without cause at any time within 10 days prior written notice.

5. **CONFIDENTIALITY.** Vendor agrees to keep confidential all the terms of this Agreement and any information of a confidential and proprietary nature that the Consultant receives from Company and or its' Client in the performance of or in connection with this Agreement. Vendor and its Consultant will treat as proprietary, any information belonging to Company, its affiliated companies, or any third parties disclosed to Vendor in the course of Vendor's services to Company.

6. **WARRANTY.**  Vendor warrants that it has the full power and authority to enter into and perform this Agreement, and that the work, product, and/or materials resulting from and/or in connection with this Agreement or the Services in connection with the Consulting Agreement will not violate or infringe any contractual, employment, non-disclosure, property or proprietary right of any third party with which Vendor has elsewhere contracted, and Vendor shall not issue any press releases or otherwise use the Company' and or its' clients name, trademark and/or logo or any other property of Company' and or its' clients other than as specifically set forth herein.

1

7. **INDEMNIFICATION.** Vendor and or its Contractor(s) agree that it is not an employee of the Company or its Client, or is entitled to any benefits provided or rights guaranteed by Company or its Client, or by operation of law, to their respective employees, including but not limited to group insurance, liability insurance, disability insurance, paid vacation, sick leave or other leave, retirement plans, health plans, premium "overtime" pay, and the like. It is understood and agreed that Company will make no deductions from fees paid to Vendor for any federal or state taxes or FICA, FUTA, SDI, SUI. Vendor agrees that it is its responsibility to make required FICA, FUTA, SDI, SUI, Income tax withholdings or other payments related to its Contractor and provide Worker's compensation coverage or to make premium overtime payments, if applicable. Vendor shall indemnify and hold Company and its Client's harmless for any Worker's compensation, "overtime" claims, tax liability claims, or other claims brought or liabilities imposed against Company or its' Client by Contractors or any third party (including governmental bodies or courts), whether relating to Contractor's working visa status, or any other matters involving the acts or omissions of the Vendor or its Contractor(s). Vendor shall comply with the Fair Labor Standards Act, Occupational Safety and Health Act, Americans with Disabilities Act, Title VII of the Civil Rights Act, and any and all other federal, state and local laws, statutes, ordinances, rules regulations, codes, orders and/or programs including but not limited to identification and procurement of required permits, certificates, approvals and inspections, labor and employment obligations, affirmative action, wage and hour laws, prevailing wage and any other laws which are or subsequently become applicable to the Contractor. Vendor agrees to indemnify, defend and hold harmless Company or its Client from any breach by Vendor or its contractor(s).

8. **ASSIGNABILITY.** Vendor shall not assign, pledge, or encumber its interest and/or duties in this Agreement.

9. **DIRECT SERVICES FOR COMPANY'S CLIENTS** By performing services for the Company's Clients, the Consultant may develop certain relationships with Client's representatives leading to awareness of other services desired by Client in the same or other divisions/units of the Client. Vendor and its Consultant agree to notify Company of such information and not to solicit to provide the Client such services directly or indirectly, during the period of time in which Consultant is performing services for the Company's Client as per this agreement and for a period of one year thereafter.

10. **INDEPENDENT CONTRACTOR.** Vendor agrees to perform the services in this Agreement solely as an independent contractor. The parties to this Agreement recognize that this Agreement does not create any actual or apparent agency, partnership or relationship of employer and employee between the parties. Vendor is not authorized to enter into or commit Company to any agreements, and Vendor shall not represent itself as the agent or legal representative of Company. Company shall exercise no immediate control over the means or manner of Vendor's performance under this Agreement, except to the extent that Company expects satisfactory completion of the services by vendor and contractor.

11. **OFFERS OF EMPLOYMENT**. Company and it's Client and Vendor and its' Contractor(s) agree to refrain from soliciting and accepting for employment or consulting services their respective employees or staff during the term of this Agreement without the prior written consent of the other.

12. **GOVERNING LAW.** Company and Consultant agree that any dispute between them arising out of this agreement or the relationship between Company and Vendor shall be submitted to arbitration under the commercial arbitration rules of the American Arbitration Association, in the State of NY

2

13. **WAIVER.**  The waiver by either party of a breach or violation of any provision of this Agreement shall not constitute a waiver of any subsequent or other breach or violation.

14. **ENTIRE AGREEMENT.**  This Agreement represents the entire agreement between the parties and replaces all understandings that may have existed between the parties.  This Agreement may not be amended, changed, or supplemented in any way except by written agreement signed by both parties.

15. **SURVIVAL.**   The terms and conditions of paragraphs 3 and 5 through 14 shall survive termination or expiration of this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

| Prime Consulting International LLC<br>Company<br>By: _____ | CALCULUS TRADING TECHNOLOGY LLC<br>VENDOR<br>By: Feng (Steve) Xue<br>Calculus Trading Technology LLC |
|---|---|
| _____<br>Name:  Stewart Koenig<br>Title:    Director Executive search services | Name: Feng (Steve) Xue<br>Title: |

3

**EXHIBIT A**

## LIST OF SERVICES

### LIST OF DELIVERABLE ITEMS/STATEMENT OF WORK

**Prime Consulting International LLC. (PCI)**
**AND**
CALCULUS TRADING TECHNOLOGY LLC

**1/ Client Location:**
BNYConvergex
Metro Park
70 Wood Avenue South 4th floor.
Iselin, NJ  08830
Phone number (732) 494-5288

**2/ Title /Function**: Software Developer, Feng ( Steve) Xue will perform duties as requested by his manager Bruce Ostrover SVP Execution Services

**3/ Term of assignment**: July 1, 009 to June 30, 2010

**4/ Contract start date: July 1 2009**

**5/ Billing Rate: As** agreed PCI shall pay to **CALCULUS TRADING TECHNOLOGY LLC $82.50/ hour** per hour for regular hours worked (i.e., for the first 8 hours of a normal working day), In addition PCI will pay to CCS Global Tech, Inc $ **82.50/ hour** per hour for pre-approved overtime hours worked (i.e., for hours beyond the first 8 hours of a normal working day).

**6**/ **Payment terms**: Payments to **CALCULUS TRADING TECHNOLOGY LLC** will be made 30 days from receipt of invoice.

**7/ Billing / Reporting:** Time Sheets: will submit a Monthly Time Sheet the last day of each month of the Term via e-mail to PCI with a copy to  Feng (Steve) Xue's manager at BNYConvergex Group.  Please make sure this information is sent with-in 2 business days of the end of each month. The report should include all hours worked per day and days worked in each week.

**8/ Invoices**: you will submit invoices, corresponding to each Monthly time sheet unless otherwise specified.

Please confirm that you accept the above.

Thanks,
Stewart Koenig

**CALCULUS TRADING TECHNOLOGY LLC**
Feng (Steve) Xue