Gordon Law LLP
Michael R. Gordon, Esq.
51 Bedford Road, Suite 2
Katonah, New York 10536
Telephone:    914.232.9500
Fax:          914.992.6634
Email:        mgordon@gordonlawllp.com
Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

FENG XUE & CALCULUS TRADING
TECHNOLOGY LLC,

                              Plaintiffs,

                                                              Case No.: 19-cv-07630

          -against-

STEWART KOENIG AND PRIME CONSULTING
INTERNATIONAL, LLC,

                              Defendants.

-------------------------------------------------------------X

**DEFENDANT PRIME CONSULTING INTERNATIONAL, LLC'S**
**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'**
**MOTION TO DISMISS AMENDED COUNTERCLIAMS**

# TABLE OF CONTENTS

*Page*

Preliminary Statement............................................................................1

I.    The Relevant Procedural History.......................................... 2

    A.    The initial pleadings and Plaintiffs' first Fed. R. Civ. P. 12 (c) motion to dismiss....................................................................2

    B.    Defendants' pending motion to dismiss for lack of subject matter jurisdiction...............................................................2

    C.    The Amended Counterclaims and Plaintiffs' request for leave to make a second 12(c) motion and for partial summary judgment on their claim in chief......................................................3

    D.    Plaintiffs' second Fed. R. Civ. P. 12(c) motion...........................4

Argument.......................................................................................5

    I    PCI's FIRST AND FOURTH COUNTERCLAIMS ARE VALID AND WELL PLED.........................................................5

    II    PCI'S SECOND COUNTERCLAIM, FOR TORTIOUS INTERFERENCE WITH CONTRACT, IS VALID AND WELL PLED ..............................................................12

    A.    PCI's Second Counterclaim is well pled..................................12

    B.    PCI's Second Counterclaim is not defeated by the "economic justification" defense.......................................................12

    III    PCI's THIRD COUNTERCLAIM, FOR PROMISSORY ESTOPPEL, IS VALID AND WELL PLED ...........................16

    A.    The Third Counterclaim is well pled.......................................16

    B.    The Third Counterclaim is not duplicative of the First Counterclaim...............................................................17

Conclusion.....................................................................................18

## **TABLE OF AUTHORITIES**

*Cases*                                                                                                    *Page*

*105 Mt Kisco Assocs. LLC v. Carozza*
    2019 U.S. Dist. LEXIS 220819, 2019 WL 6998008 (S. D.N.Y. Dec. 20, 2019)..........5,6

*Ashcroft v. Iqbal*
    556 U.S. 662, 129 S.Ct.1937 (2009)………......………..………………………….....1,5

*Bausch & Lomb, Inc. v. Mimetogen Pharms., Inc.*
    2016 U.S. Dist. LEXIS 59941, (W.D.N.Y. May 5, 2016)…………………………......13

*Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*
    692 F.3d 42,64 (2d Cir. 2012)……………………………………………………….10

*Blt Steak LLC v. Liberty Power Corp., LLC*
    2018 N.Y. Misc. LEXIS 842, 2018 NY Slip Op 30426(U), 13 (Sup. Ct. N.Y. Co. March
    13, 2018), *aff'd*, 172 A.D.3d 458 (1st Dep't 2019)…………………………………..7

*Castellotti v. Free*
    138 A. D.3d 198, 27 N.Y.S.3d 507 (1st Dep't 2016)……………………………..……16

*City of New York v. Securitas Sec. Servs. USA, Inc.*
    2015 N.Y. Misc. LEXIS 124, 2015 NY Slip Op 30065(U),7 (Sup. Ct. N.Y. Co. Jan 16,
    2015)……………………………………………………………………………………7

*Curreri v. Heritage Prop. Inv. Trust, Inc.,*
    48 A.D.3d 505, 852 N.Y.S2d 278 (2d Dep't 2008)………………….............................7

*Domingo v. Bidkind, LLC*
    2018 N.Y. Misc. LEXIS 261, 2018 NY Slip Op 30141 (U), 4 (Sup. Ct. N.Y. Co. Jan. 23,
    2018) …………………………….............................................................................17

*Foster v. Churchill*
    87 N.Y.2d 744, 642 N.Y.S.2d 583 (1996)……………………………………….....14

*GSO Coastline Credit Partnership LP v. Global A&T Elecs. Ltd.,*
    2015 N.Y. Misc. LEXIS 2541, 2015 Slip Op 31232(U), 33 Sup. Ct. N.Y. Co. July 14,
    2015) …………………...........................................................................13,14,15

*Harco Nat'l Ins. Co. v. Arch Specialty Ins. Co.*
    2008 U.S. Dist. LEXIS 30629, 2008 WL 1699755 (S.D.N.Y. April 9, 2008), *aff'd*, 328
    Fed. Appx. 678 (2d Cir.2009)………………………………………………...…..8,9

*In re Teekay Offshore Partners L.P. Common Unitholders Litig.*
    2021 U.S. Dist. LEXIS 62772, 2021 WL 1227415 (S.D.N.Y. March 13,
    2021)……………….......................................................................................13

*Ithaca Capital Invs. I.S.A. v. Trump Pan. Hotel Mgmt. LLC*
    450 F. Supp.3d 358(S.D.N.Y. 2020)………………………………………...13,15

*Kittay v. Kornstein.*
    230 F.3d 531 (2d Cir. 2000)……………………….....................................1,5

*Martin v. Campanaro*
    156 F.2d 127 (2d Cir.1946) ……………………….....................................6,8

*MatlinPatterson ATA Holdings LLC v. Federal Express Corp.*
    87 A.D.3d 836, 929 N.Y.S.2d 571 (1st Dep't 2011)………………………………16

*North American Hyperbaric Ctr. v. City of New York*
    198 A.D.2d 148, 604 N.Y.S 3d (1st Dep't 1993)……………………………………6

*Scores Holding Co. v. SCMD LLC,*
    2020 U.S. Dist. LEXIS 14651, 202 WL 4735198 (S.D.N.Y. Aug 14, 2020)………...7,8

*U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*
    2021 U.S. Dist. LEXIS 640817, 2021 WL 1227052 (S.D.N.Y. March 31,
    2021)………………………………………………………………………......11

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*
    8 N.Y.3d 422, 867 N.E.2d 381, 835 N.Y.S.2d 530 (N.Y.2007)……………………...13

<u>*Rules & Statutes*</u>

Fed R. Civ. P.8 ……………………………………………………………....1,5,9,10

Fed R. Civ. P.9 …………………………………………………………………….....6

Fed. R. Civ. P.12(b)……………………………………………………………….....3

Fed. R. Civ. P.12 (b)(6)……………………………………………………………...5

Fed. R. Civ. P.12(c)………………………………………………………………...1,2

Fed. R. Civ. P. 56 …………………………………………………………….......2

### Preliminary Statement

Defendant Prime Consulting Inc. ("PCI") hereby opposes the motion by Plaintiffs Feng Xue and Calculus Trading Technology LLC ("Calculus," together with Xue, "Plaintiffs"[1]) pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings dismissing PCI's Counterclaims.[2] This is the second such motion Plaintiffs have made.  The first was denied in part and granted in part in March 2021.  As shown below, this second 12(c) motion should be denied in its entirety.

Plaintiffs' two-part theory is that PCI did not plead its Counterclaims with particularity and that there are legal defenses that defeat the Counterclaims.  We respectfully submit that Plaintiffs are wrong on both counts.  *First*, the Counterclaims meet the pleading standard of Fed. R. Civ. P. 8, because they are facially plausible and put Plaintiffs on notice of the claims against them.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940 (2009) (facial plausibility) and *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (pleadings must provide "'a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'").  *Second*, there are no defenses that would preclude PCI's assertion of its Counterclaims as a matter of law; the defenses that Plaintiffs offer have no bearing whatsoever on any of the Counterclaims.  Thus, Plaintiff's Fed. R. Civ. P. 12(c) motion should be denied.

---

[1]    It might seem trivial, but Plaintiffs' repeated use of the singular "Plaintiff" to define themselves is a misleading attempt to bolster their contention that Mr. Xue is the only true plaintiff here, with Calculus a legal fiction that can be ignored.  Plaintiffs want the Court to disregard Calculus because that advances their argument that "[t]his matter is a [FLSA] claim for unpaid wages," a Xue claim, not a Calculus claim.  *See* Pltfs' July 20, 2021 Mem. at 1.  As we explain in our pending motion to dismiss for lack of subject matter jurisdiction, this is not a case about unpaid wages; it is a case about a commercial dispute between two companies, Calculus and PCI, with an amount in controversy below what is required for diversity subject matter jurisdiction, the basis of our subject matter jurisdiction motion.  *See* ECF Doc. Nos. 49-52.

[2]    The last page of their memorandum of law makes clear that Plaintiffs are ***not moving*** against those portions of the First and Fourth Counterclaims based on the "Indemnification Agreement."  *See* Pltfs' July 20, 2021 Mem. at 6 ("all of the Defendant's counterclaims should be dismissed with the exception of Count I (and possibly Count IV) and only as to the Indemnity Agreement … .").

## The Relevant Procedural History

**A.      The initial pleadings and Plaintiffs' first Fed. R. Civ. P. 12(c) motion to dismiss**

Plaintiffs began this case on August 15, 2019. *See* ECF Doc. No. 1.  In its October 25, 2019 Answer, Defendant PCI asserted four counterclaims:  breach of contract against Calculus arising out of three written contracts between Calculus and PCI,[3] tortious interference with contract against Calculus and Xue, promissory estoppel against Calculus, and  declaratory judgment for indemnification against Calculus. *See* ECF Doc. No. 9.  On June 1, 2020, Plaintiffs moved to dismiss PCI's First and Fourth Counterclaims, respectively for breach of contract and declaratory judgment. *See* ECF Doc. No. 34.  Plaintiffs' motion was granted in part and denied in part on March 22, 2021 (the "March 22 Order"). *See* ECF Doc. No. 66.  The Court (*a*) dismissed with prejudice those portions of PCI's First and Fourth Counterclaims based on the unsigned Noncompetition Agreement, (*b*) dismissed ***without prejudice*** those portions of First and Fourth Counterclaims based on the Consulting Agreement, and (*c*) denied as premature the motion to dismiss Indemnification Agreement Counterclaims. *See id*. at 20.

**B.      Defendants' pending motion to dismiss for lack of subject matter jurisdiction**

Although depositions have, with one exception, been stayed by the Court, written discovery was exchanged and has concluded. *See* Gordon Dec., ¶ 4.[4]  After written discovery concluded, Defendants moved pursuant to Fed. R. Civ. P. 56 or, in the alternative, Fed. R. Civ. P. 12, to dismiss this case for lack of subject matter jurisdiction. *See* ECF Doc. No. 49.  The basis of the motion, which is *sub judice*, is that there are no grounds to support a FLSA claim (as no

---

[3]      The contracts are  a 2005 "Non-Competition Agreement," a July 2009 "Consulting Agreement," and a December 2009 "Indemnification Agreement," all appended to Plaintiffs' July 20, 2021 Mem.

[4]      The "Gordon Dec." refers to the August 27, 2021 Declaration of Michael R. Gordon.

employment relationship existed between Plaintiff Xue and Defendants), and the amount in controversy on the state law claims is insufficient to sustain diversity jurisdiction. *Id.*

**C.      The Amended Counterclaims and Plaintiffs' request for leave to make a second 12(c) motion and for partial summary judgment on their claim in chief**

On April 8, 2021, PCI filed its Amended Counterclaims providing greater detail as to the basis for PCI's claim for breach of an implied contract between Calculus and PCI. *See* ECF Doc. No. 67. A copy of a track-changed version of the Amended Counterclaims showing the changes that PCI made to its Counterclaims is annexed as Exhibit A to the Gordon Dec. Plaintiffs filed their Answer to the Amended Counterclaims on April 28, 2021; they did not move to dismiss the Counterclaims pursuant to Fed R. Civ. P. 12(b). *See* ECF Doc. No. 68. On June 29, 2021, Plaintiffs sought, by letter to the Court, leave to move for a second time for judgment on the pleadings, seeking the dismissal of the Counterclaims; Plaintiffs also sought leave to move for partial summary judgment on their claim for allegedly unpaid invoices. *See* ECF Doc. No. 69. Defendants opposed Plaintiffs' request based on the pendency of Defendants' motion to dismiss for lack of subject matter jurisdiction, the fact that Plaintiffs waited to make their 12(c) motion until after they deposed Defendant Koenig, and the lack of substantive merit of their proposed motion. *See* ECF Doc. No. 70.

In a June 30, 2021 Memorandum Endorsement, the Court granted in part and denied in part Plaintiffs' request for leave to move for judgment on the pleadings with respect to the Counterclaims and for partial summary judgment on their claim in chief. *See* ECF Doc. No. 71. The Court permitted Plaintiffs to move to dismiss the Counterclaims but only to the extent "not duplicative" of their first 12(c) motion to dismiss and thus denied Plaintiffs leave to move to dismiss the Counterclaims arising out of the Indemnification Agreement and the Noncompetition Agreement. *Id.* at 1. As the Court noted in its June 30 Memorandum Endorsement, referencing

3

its March 22 Order, the validity of the Indemnification Agreement Counterclaims turns on the

factual issue of whether an employment relationship existed between Plaintiffs and Defendants,

an issue the Court deemed premature: "the Court does not have an adequate record to say

whether or not Defendants are Plaintiff's employer for the purposes of the FLSA." *Id.* at 1.

Along the same lines, the Court denied as "wildly premature" Plaintiffs' request for leave to

move for summary judgment. *Id.* at 2.

**D.**   **Plaintiffs' second Fed. R. Civ. P. 12(c) motion**

Pursuant to the scheduling section of the June 30 Memorandum Endorsement, Plaintiffs

served their second 12(c) motion to dismiss on July 20, 2021.  *See* Gordon Dec., ¶ 6.  Their

motion seeks the dismissal of all of PCI's counterclaims.  Plaintiffs make three arguments:

*First*, Plaintiffs argue in Points I and IV of their Memorandum of Law that the First and

Fourth Counterclaims should be dismissed to the extent they are based on the Consulting

Agreement.  Plaintiffs argue that (*a*) the Consulting Agreement is invalid under the New York

Statute of Frauds and (*b*) PCI did not provide sufficient detail to establish in their pleading that

the parties agreed to treat the Consulting Agreement as valid even after its natural expiration.

*See* Pltfs' Mem. of Law at 3, 5-6.  *Second*, Plaintiffs argue that the Second Counterclaim, for

tortious interference with contract, should be dismissed because (*a*) PCI did not plead that

Cowen, the company with which PCI had a contractual relationship, breached its contract with

PCI, and (*b*) Plaintiff[5] had a valid economic justification for interfering with the contractual

relationship between PCI and Cowen, which precludes the tortious interference claim.  *See id.* at

---

[5]      As noted above, Plaintiffs refer to themselves in the singular.  Not only is this misleading with
respect to the employer-employee issue discussed above in footnote 1, it is confusing here, because it is
not clear if Plaintiffs are arguing that Calculus or Xue had the economic justification to cause Cowen to
breach its contract with PCI.  From the context of Plaintiffs' memorandum of law, it appears that
Plaintiffs are referring to Plaintiff Xue only.

pp. 4-5. *Third*, Plaintiffs argue that the Third Counterclaim, for promissory estoppel, should be dismissed because (*a*) it does not detail any promises, (*b*) it does not plead that Calculus caused PCI "unconscionable injury," rendering the claim susceptible to dismissal based on Statute of Limitations grounds, and (*c*) it is duplicative of PCI's breach of contract claims. *See id.* at 5.

As explained below, none of Plaintiffs' arguments has any merit.

## Argument

## I

## PCI's FIRST AND FOURTH COUNTERCLAIMS ARE VALID AND WELL PLED

Plaintiffs argue that the First and Fourth Counterclaims do not state with particularity a claim for breach an implied contract and are barred by the Statute of Frauds.

At the outset, as noted above, Plaintiffs are not applying the correct pleading standard, as Fed. R. Civ. P. 8, which applies, requires only a plain, concise statement of the claim sufficient to demonstrate facial plausibility and provide sufficient detail so that the defendants understand the claims being leveled against them. *See* Fed. R. Civ. P. 8; *Ashcroft v. Iqbal, supra*; *Kittay v. Kornstein, supra*. This Court set forth that standard, at length, in its March 22, 2021 Order:

> On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the [counterclaim] "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" … . A [counter]claim is facially plausible "when the [counterclaim] plaintiff pleads factual content that allows the court to draw the reasonable inference that the [counterclaim] defendant is liable for the misconduct alleged." Id. At the dismissal stage, a counterclaim, need not "contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." … . "At this stage, dismissal is appropriate only [if the movant] can prove no set of facts . . . that would entitle [the non-movant] to relief." … . In evaluating a motion to dismiss, the Court must accept the well-pleaded allegations of the Complaint as true and draw all inferences in the non-moving party's favor. …

ECF Doc. No. 66 at 8. Internal citations omitted. The Court's articulation of this standard is law of the case. *See 105 Mt. Kisco Assocs. LLC v. Carozza*, 2019 U.S. Dist. LEXIS 220819, *28,

2019 WL 6998008 (S.D.N.Y. Dec. 20, 2019) (Roman, J.) ("Under the law of the case doctrine, "[w]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'""). There are no reasons why this Court should deviate from the well-settled Rule 8 standard applicable to the Counterclaims at bar, as they include no claim (such as fraud) requiring particularized pleadings under Fed. R. Civ. P. 9.

As for the sufficiency of a claim for breach of an implied contract, this Court recited in its March 22 Order the rule that "[i]n order to plead an implied in fact contract, a party must allege the same elements of an express contract – i.e., 'consideration, mutual assent, legal capacity and legal subject matter.' … . With respect to mutual assent, '[t]he conduct of a party may manifest assent if the party intends to engage in such conduct and knows that such conduct gives rise to an inference of assent.'" ECF Doc. No. 66 at 19 (Internal citations omitted). Here, Plaintiffs do not challenge the sufficiency of the allegations concerning consideration, the parties' legal capacity to contract with one another, or the legal subject matter. Rather, they focus on mutual assent, arguing that PCI did not provide sufficient detail to set forth a valid implied contract claim.

What Plaintiffs challenge is the well-settled and long standing principle that parties can impliedly agree to extend a written contract that has otherwise expired by its terms. *See Martin v. Campanaro*, 156 F.2d 127, 129 (2d Cir. 1946) ("When an agreement expires by its terms, if, without more, the parties continue to perform as theretofore, an implication arises that they have mutually assented to a new contract containing the same provisions as the old."). Thus, in *North Am. Hyperbaric Ctr. v. City of New York*, 198 A.D.2d 148, 149, 604 N.Y.S.2d 56, 57 (1st Dep't 1993), the Court recognized that "after the expiration of their contract, the parties' conduct could have evidenced their mutual assent to a new contract embracing the same provisions and terms

as their prior contract, since *it is well settled in New York that 'when an agreement expires by its terms, if, without more, the parties continue to perform as theretofore, an implication arises that they have mutually assented to a new contract containing the same provisions as the old*." Emphasis supplied.  *See also BLT Steak LLC v. Liberty Power Corp., LLC*, 2018 N.Y. Misc. LEXIS 842, *18, 2018 NY Slip Op 30426(U), 13 (Sup. Ct. N.Y. Co. March 13, 2018), *aff'd*, 172 A.D.3d 458 (1st Dep't 2019) ("if, after expiration of a contract, the parties continue to conduct business in the same manner as they did before, they impliedly assent to a new contract on the same terms as the prior one"); *Curreri v. Heritage Prop. Inv. Trust, Inc.*, 48 A.D.3d 505, 506-507, 852 N.Y.S.2d 278, 281 (2d Dep't 2008) ("despite the fact the original contract had expired, their conduct evidenced their mutual assent to a new contract embracing the same provisions and terms as their prior contract … ."); *City of New York v. Securitas Sec. Servs. USA, Inc.*, 2015 N.Y. Misc. LEXIS 124, *9, 2015 NY Slip Op 30065(U), 7 (Sup. Ct. N.Y. Co. Jan. 16, 2015) ("It is well established in New York state and federal courts that after the expiration of a contract, the parties may, through conduct, mutually assent to a new contract embracing the same provisions and terms as their prior contract.").

Applying this principle of implied, mutual assent to extending a written contract that has otherwise expired, the Court in *Scores Holding Co. v. SCMD LLC*, 2020 U.S. Dist. LEXIS 146541, *15-16, 2020 WL 4735198 (S.D.N.Y. Aug. 14, 2020), held that "[u]nder New York law, ''the parties' conduct after the expiration of [a] written contract, including [one party's] continued rendition of services, [the other's] acceptance of those services and . . . payment . . . in accordance with the terms of the written contract' can establish 'a contract implied in fact with substantially the same terms and conditions as embodied in the expired written contract. … .'" There, the defendant argued it was not bound by an intellectual property sublicense agreement

because the ten-year term of that agreement had expired.[6] Judge Gardephe held that because plaintiff alleged that the parties continued to act as if their agreement was still in effect, it stated a valid claim: "According to the Amended Complaint, however, 'Defendant continued to use the SCORES name and trademark and pay royalties pursuant to the Sublicense "'Agreement until July 2017 - well after the Sublicense Agreement expired..'" *Scores Holding Co.*, 2020 U.S. Dist. LEXIS 146541 at *15. Thus, Judge Gardephe denied the motion to dismiss, which was based on the expiration of the sublicense agreement: "accepting [the allegations of the Complaint] as true, it is plausible that the parties 'mutually assented to a new contract containing the same provisions as the old.' Martin [v. Campanaro], 156 F.2d at 129." *Id.* at *16."

Similarly, in *Harco Nat'l Ins. Co. v. Arch Specialty Ins. Co.*, 2008 U.S. Dist. LEXIS 30629, *16, 2008 WL 1699755 (S.D.N.Y. April 9, 2008), *aff'd*, 328 Fed. Appx. 678 (2d Cir. 2009), parties to a written contract that had expired manifested their mutual assent to continue to be bound by that contract by continuing to do business together under the original contract terms:

---

[6]     The relevant allegations in the Scores Amended Complaint, which is available on PACER and is also annexed as Exhibit B to the accompanying Gordon Dec., provided *less* detail than PCI did in the Amended Complaint.  Scores pled the basis for an implied contract in two paragraphs. First, in Paragraph 16, Scores pled that, "[t]hroughout the course of the license relationship, until mid 2017 Defendant continued to use the SCORES name and trademark and pay royalties pursuant to the Sublicense. Even though the Sublicense was not renewed in writing after an initial ten year term, each party continued to perform under the same terms, manifesting their mutual intent to continue an ongoing business relationship as before." Then, in Paragraph 18, Scores pled, with no greater detail, "[t]hroughout all times relevant herein, Plaintiff performed services pursuant to the Sublicense Agreement, including licensing the Defendant to use the SCORES name and trademarks and conduct business as SCORES Baltimore." These allegations were sufficient to state a claim for an implied contract. *See Scores Holding Co.*, 2020 U.S. Dist. LEXIS 146541 at *16-17 ("According to the Amended Complaint, even after the ten-year term of the Sublicense Agreement had expired, Defendant continued to use the SCORES mark and continued to pay royalties for the right to use the mark. ... .  Accepting these allegations as true, it is plausible that the parties 'mutually assented to a new contract containing the same provisions as the old.' Martin, 156 F.2d at 129. Defendant's motion to dismiss for failure to state a claim — premised on the argument that the Amended Complaint does not plead the existence of a contract — will therefore be denied."). If that pleading was sufficient, the Amended Complaint at bar, which is far more detailed, is surely sufficient.

"[w]here the parties continue to do business after the expiration of a contract as though the same contract terms apply, New York Courts will construe their actions as extending the terms of the original contract [because] … an implication arises that they have mutually assented to a new contract containing the same provisions as the old.'" *Harco Nat'l Ins. Co.*, 2008 U.S. Dist. LEXIS 30629, at *15-16.

Here, PCI states its claim for an implied contract concisely, as it was required to do by Fed. R. Civ. P. 8, but with more than enough factual content to put Plaintiffs on notice of PCI's claim. That is, the Amended Counterclaims notified Plaintiffs that PCI was alleging that PCI and Calculus entered into an implied contract based on their manifested intent to continue their otherwise expired Consulting Agreement through a continued pattern of services provided, invoices rendered, and payments made. Thus, Paragraph 44 of the Amended Counterclaims alleges that "[a]lthough the Consulting Agreement contained a provision that its Term would commence on July 1, 2009 and continue until to June 30, 2010, Xue, on behalf of Calculus, and Koenig, on behalf of PCI, agreed that the Consulting Agreement would continue to remain in effect for so long as Calculus and PCI continued to do business with one another." Paragraph 45 alleges that "[a]fter June 30, 2010, Calculus and PCI continued to maintain the same business relationship that was in effect between July 1, 2009 and June 30, 2010, impliedly based on the terms, conditions, and provisions of the Consulting Agreement. And Paragraphs 46-54 allege that Calculus continued to provide the same services that Calculus provided between July 1, 2009 and June 30, 2010, Calculus continued to invoice PCI for the services Calculus rendered, Calculus did not look to PCI for direction or supervision, Calculus did not look to PCI for "liable workers' compensation insurance, , unemployment insurance, employers-liability, employers FICA, social security, withholding tax, or other taxes or withholding for or on behalf of

9

[Calculus] or [Xue]," and thus the parties operated under an implied contract following the terms, provisions, and conditions set forth in the Consulting Agreement." Lest there be any doubt about PCI's allegations, Paragraphs 51 and 52 allege that Xue, on behalf of Calculus, repeatedly confirmed that he understood that Calculus had an implied contract with PCI based upon the terms, conditions, and provisions set forth in the Consulting Agreement and never made any statements indicating any doubt about the existence of that implied contract.

These allegations provide more than enough factual material to put Plaintiffs on notice of PCI's Counterclaim: PCI alleges the services Calculus provided to PCI's client, the manner of payment for those services, the parties' explicit acknowledgment that they had chosen to operate as if the original Consulting Agreement were in effect, and the parties' continued business for seven more years, from 2010 – 2017, under the terms of the original Consulting Agreement. Under Fed. R. Civ. P. 8, PCI was not required to allege anything more.

Notwithstanding this Court's citation to Rule 8 in its March 22 Order, which, as noted above, was based on basic, hornbook pleading law, Plaintiffs contend that PCI did not provide the level of specificity that would be required to meet the Rule 9 pleading standard, which applies to fraud and other specialty claims that require heightened pleading. *See* Pltfs' July 20, 2021 Mem. at 3 ("the Amended Answer says next to nothing about what Plaintiff *specifically* said and when in order to manifest assent with such agreement … . [T]here are no *specific* allegations whatsoever which show or imply that the parties ever worked under this particular agreement and not some other understanding."). Emphasis supplied. That argument fails. There is no heightened pleading for breach of contract claims, as this Court and the cases cited above make clear. *See Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 64 (2d Cir. 2012) ("gross negligence and breach of contract claims fall under Rule 8(a), and thus require

only a 'short and plain statement of the claim,' so long as the facts alleged and any reasonable inferences that can be drawn in Bayerische's favor give rise to a plausible claim for relief."); *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 2021 U.S. Dist. LEXIS 64017, *82, 2021 WL 1227052 (S.D.N.Y. March 31, 2021) ("'A party advancing a breach of contract claim need not satisfy the particularity requirement of Rule 9(b).' … . Rather, 'relatively simple allegations will suffice to plead a breach of contract claim even post-Twombly and Iqbal.' … .").

Thus, PCI was under no obligation to plead the details of the conversations between Xue and Koenig on continued validity of the original Consulting Agreement or any of the other details of their contractual relationship. For the same reason, the First and Fourth Counterclaims do not fail under the New York Statute of Frauds, as Plaintiffs contend. *See* Pltfs' July 20, 2021 Mem. at 3. For the reasons set forth above, the law allows parties to remain in contract even after the expiration of a written contract bound by a term of years if, as at bar, the parties manifest an intent to remain in contract. That's exactly what happened here, and that's exactly what the First and Fourth Amended Counterclaims allege: that after the Consulting Agreement reached its natural expiration date, PCI and Calculus continued to act as though it were still in effect, with PCI paying Calculus' invoices, Calculus continuing to provide services to PCI's client, Cowen, and the parties following the same protocol that existed under the Consulting Agreement.

Accordingly, Plaintiffs' motion for judgment on the pleadings as to the First and Fourth Counterclaims should be denied.

## II

## PCI's SECOND COUNTERCLAIM, FOR TORTIOUS INTERFERENCE WITH CONTRACT, IS VALID AND WELL PLED

**A.    PCI's Second Counterclaim is well pled**

Plaintiffs argue that the Second Counterclaim, for tortious interference with contract, fails because, they say, PCI did not plead that Cowen, a former PCI client and the target of Plaintiffs' tortious interference, breached its contract with PCI.  *See* Pltfs' July 20, 2021 Mem. at 4.  That is simply not true.  PCI pleads that Cowen was once a PCI client and had a contract with PCI (Am. Cmplt (ECF Doc. No. 67 at ¶¶ 67, 88), that Plaintiffs made false statements to Cowen that caused Cowen to terminate its contract with PCI (*id.*, ¶¶ 67-68, 91), and that Cowen's decision to terminate its contract with PCI was unjustified and a breach (*id.*, ¶¶ 94-95) ("There was no legitimate basis for Cowen to terminate the PCI-Cowen contract.  Cowen's decision to terminate the PCI-Cowen contract was a ***breach*** of that contract.").  Emphasis supplied.  PCI could not have been clearer in alleging that Cowen breached its contract with PCI based on Plaintiffs' statements to Cowen about PCI.

Thus, we respectfully submit that the Second Counterclaim was well pled.

**B.    PCI's Second Counterclaim is not defeated by the "economic justification" defense**

Plaintiffs argue that the Second Counterclaim should be dismissed for the additional reason that PCI pled that one or both of Plaintiffs had an "economic justification" to cause Cowen to breach its contract with PCI.[7]  That argument fails for three reasons.

---

[7]      It is unclear whether the "economic justification" defense is being advanced by Xue, Calculus, or both, as Plaintiffs once again use the singular "Plaintiff" to describe themselves. *See also* fn. 1.  In all events, the defense is not available to either or both of the Plaintiffs for the reasons set forth below.

*First,* at the most basic level, the economic justification defense – and it is a defense and not an element to be pled[8] – is inapplicable because neither Plaintiff had an economic or legal interest in Cowen, the party in contract with PCI.  Contrary to Plaintiffs' contention, the economic justification defense does not protect interfering defendants who are "acting in his or her economic interest."  Pltfs' July 20, 2021 Mem. at 4.  Indeed, "an interferer acting to protect its own direct interests, rather than its interest in the breaching party, may not raise the economic interest defense."  *Bausch & Lomb, Inc. v. Mimetogen Pharms., Inc.*, 2016 U.S. Dist. LEXIS 59941, *33 (W.D.N.Y. May 5, 2016).  Rather, the economic justification defense may be invoked only "where a third party has a financial stake in an entity and interferes with an existing contract between the claimant and that entity … ."  *Ithaca Capital Invs. I S.A. v. Trump Pan. Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 373 (S.D.N.Y. 2020).  *See also GSO Coastline Credit Partnership LP v. Global A&T Elecs. Ltd.*, 2015 N.Y. Misc. LEXIS 2541, *36, 2015 NY Slip Op 31232(U), 33 (Sup. Ct. N.Y. Co. July 14, 2015) ("A party with an economic or legal interest in the breaching party's  business may assert the so-called 'economic interest' defense against claims for tortious interference with an existing contract."); *In re Teekay Offshore Partners L.P. Common Unitholders Litig.*, 2021 U.S. Dist. LEXIS 62772, *33, 2021 WL 1227415 (S.D.N.Y. March 13, 2021) ("New York defines 'economic interest' as a 'legal or financial stake in the breaching party's business.' White Plains Coat & Apron Co. v. Cintas Corp., 8 N.Y.3d 422, 867 N.E.2d 381, 383, 835 N.Y.S.2d 530 (N.Y. 2007).").  Thus,  the New York Court of Appeals put it this way in *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, *supra*:

> The defense has been applied, for example, where defendants were significant stockholders in the breaching party's business; where defendant and the breaching party had a parent-subsidiary relationship; where defendant was the breaching party's creditor; and where the

---

[8]    *See Ithaca Capital Invs. I S.A. v. Trump Pan. Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 372 (S.D.N.Y. 2020) ("the economic interest justification is an affirmative defense to a tortious interference claim, rather than an element to be pled.").

defendant had a managerial contract with the breaching party at the time defendant induced the breach of contract with plaintiff.

A defendant who is simply plaintiff's competitor and knowingly solicits its contract customers is not economically justified in procuring the breach of contract. In other words, mere status as plaintiff's competitor is not a legal or financial stake in the breaching party's business that permits defendant's inducement of a breach of contract.

Thus, it is not true, as Plaintiffs allege, that "Defendants' own pleadings establish the defense of economic justification … ." *See* Pltfs. July 20, 2021 Mem. at 4-5. PCI does not allege that either Plaintiff had an economic or legal interest in Cowen. To the contrary, the Counterclaims plead that Plaintiff Xue was tasked by Plaintiff Calculus to work for Cowen. That is either an independent contractor relationship or a Cowen-Xue employment relationship. But it is not a relationship that comes close to the sort of parent-subsidiary, substantial investor, or management relationship that might support the economic justification defense.

*Second,* even if Plaintiffs could invoke the economic justification defense, they are wrong to suggest that PCI somehow admitted the applicability of that defense. PCI did no such thing. Rather, PCI pled that Plaintiffs knowingly made false statements to Cowen "in order to ***cause financial harm*** to PCI, to unfairly and ***unduly pressure PCI*** to make payments to Xue and Calculus that PCI was not and is not obligated to make, and to facilitate Xue becoming employed by Cowen." Am. Cmplt (ECF Doc. No. 67) at ¶ 70. Emphasis supplied. In *Foster v. Churchill,* 87 N.Y.2d 744, 750, 642 N.Y.S.2d 583, 586 (1996), the New York Court of Appeals held that "economic interest is a defense to an action for tortious interference with a contract unless there is a showing of malice or illegality." As one New York State Court recently put it, "[a]n economic justification defeats a tortious interference claim unless the plaintiff shows that the defendant acted maliciously or used illegal means to bring about the breach." *GSO Coastline*

*Credit Partnership LP v. Global A&T Elecs. Ltd.*, 2015 N.Y. Misc. LEXIS 2541, \*36, 2015 NY Slip Op 31232(U), 33 (Sup. Ct. N.Y. Co. July 14, 2015).

Here, PCI pleads that Plaintiffs tortiously interfered with the PCI-Cowen contract to harm PCI. That is an allegation of malice. Moreover, PCI pleads that Plaintiffs to interfered with the PCI-Cowen contract by fraudulent means: knowingly false statements intended to deceive Cowen. Those allegations of malice render the economic justification defense inapplicable.

*Third*, as noted above, the "economic justification" defense is a defense, not an element of a claim to be pled by the plaintiff/counterclaim-plaintiff. PCI's obligation was to plead, with plausibility, that Plaintiffs caused Cowen to breach its contract with PCI, leading to damages. That's what PCI pled. Whether Plaintiffs can ultimately establish as a factual matter that they had an economic or legal interest in Cowen justifying their interference with the PCI-Cowen contract is not a 12(b) or 12(c) matter; it is a factual matter that cannot be resolved on this motion, on this record. As the Court held in *Ithaca Capital Invs. I S.A. v. Trump Pan. Hotel Mgmt. LLC*, 450 F. Supp. 3d at 372-373:

> the economic interest justification is an affirmative defense to a tortious interference claim, rather than an element to be pled. … In general, affirmative defenses require consideration of facts outside of the complaint and are inappropriate to consider on a motion to dismiss, unless "the facts necessary to establish the defense are evident on the face of the complaint."

As the pleadings do not make evident the existence of an economic justification defense, that defense cannot be a basis for the dismissal of the Second Counterclaim.

Accordingly, the motion for judgment on the pleadings as to the Second Counterclaim should be denied.

## III

## PCI's THIRD COUNTERCLAIM, FOR PROMISSORY ESTOPPEL, IS VALID AND WELL PLED

**A.     The Third Counterclaim is well pled**

Plaintiffs argue that the Third Counterclaim fails because it does not plead a "clear and unambiguous promise" and it does not plead that Defendants suffered unconscionable injury at the hands of Plaintiffs. *See* Pltfs' Mem. at 5.  Neither argument has merit.

*First*, PCI sufficiently pleads that Plaintiffs breached clear and unambiguous promises they made to PCI. *See* Am. Cmplt (ECF Doc. No. 67) at ¶¶ 6, 34-37, 55-56, 99-102.  The elements of a promissory estoppel claim are "(1) a promise that is sufficiently clear and unambiguous; (2) reasonable reliance on the promise by a party; and (3) injury caused by the reliance." *MatlinPatterson ATA Holdings LLC v. Federal Express Corp.*, 87 A.D.3d 836, 841-842, 929 N.Y.S.2d 571, 577 (1st Dep't 2011).  In Paragraph 6 of its Amended Complaint, PCI pleads that "Calculus repeatedly promised, clearly and unambiguously, to task Xue and/or others to perform technology services work to and for the benefit of the Clients in exchange for payment by PCI to Calculus."  PCI also pleads that Calculus "clearly and unambiguously" promised to abide by its obligations under the Indemnification Agreement and the Consulting Agreement. *See* Am. Cmplt at ¶¶ 34-35, 55-56.  As PCI pleads the contents of those contracts, there can be no doubt as to the promises that PCI claims Calculus made.  And that makes PCI's pleading sufficient.

*Second*, Plaintiffs erroneously conclude that PCI should have pled an unconscionable injury, since that pleading requirement only applies where the Statute of Fraud undermines a corresponding breach of contract claim. *See Castellotti v. Free*, 138 A.D.3d 198, 204, 27 N.Y.S.3d 507, 513-514 (1st Dep't 2016) ("If a contract is barred by the statute of frauds, a

promissory estoppel claim is viable in the limited set of circumstances where unconscionable injury results from the reliance placed on the alleged promise."). As discussed above, PCI's breach of contract claim is not barred by the Statute of Frauds. Therefore, there was no need for PCI to plead unconscionable injury on its promissory estoppel claim, and the Third Counterclaim should be found to be well pled.[9]

## B.   The Third Counterclaim is not duplicative of the First Counterclaim

Plaintiffs argue that the Third Counterclaim is duplicative of the First Counterclaim for breach of contract. That argument fails because Plaintiffs dispute the validity of the contracts at issue here. *See* Am. Counterclaims at ¶¶ 75 ("The Indemnity Agreement, the Consulting Agreement, and the Non-Compete were all valid agreements enforceable under New York law") and 79 ("Although the Consulting Agreement contains a provision that the Term of the Consulting Agreement expired June 30, 2010, PCI and Calculus acted and did business with one another pursuant to, and impliedly based on, the terms, conditions, and provisions of the Consulting Agreement as if it were in full force and effect after June 30, 2010.") and the corresponding Answer by Plaintiffs, ECF Doc. No. 68 at ¶¶ 75 and 79. This bona fide dispute as to the enforceability of the subject contracts justifies the assertion of the promissory estoppel claim. *See Domingo v. Bidkind, LLC*, 2018 N.Y. Misc. LEXIS 261, *6, 2018 NY Slip Op 30141(U), 4 (Sup. Ct. N.Y. Co. Jan. 23, 2018) ("If, however, there is a bona fide dispute as to the existence of a contract . . . a party will not be required to elect his or her remedies and may

---

[9]      Plaintiffs cite this Court's March 22 Order addressing the possibility of a promissory estoppel claim in the context of a written contract barred by the Statute of Frauds. *See* Pltfs' July 20, 2021 Mem. at 5; *see also* the March 22 Order (ECF Doc. No. 66) at p. 17. As PCI has amended its claims to make clear that it is pleading an implied contract based on an agreed-upon extension of the Consulting Agreement, and as the Indemnification Agreement is clearly not barred by the Statute of Frauds, there is no reason why PCI would have been required to plead unconscionable injury. The Statute of Frauds is not implicated by the amended counterclaims.

proceed on both quasi contract and breach of contract theories[.] … .  Here, BidKind denies the enforceability of the Loan Agreement and therefore, Santo Domingo may plead promissory estoppel as an alternative theory of recovery.").

Accordingly, the motion for judgment on the pleadings as to the Third Counterclaim should be denied.

**Conclusion**

For the reasons set forth above Plaintiffs' motion for judgment on the pleadings should be denied in all respects.

Date:   Katonah, New York
   August 30, 2021

           Respectfully yours,


           GordonLaw LLP


           By: _____
              Michael R. Gordon (MG-7838)

              *Attorneys for Defendants*
              51 Bedford Road, Suite 2
              Katonah, NY 10536
              (914) 232-9500
              mgordon@gordonlawllp.com