```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/31/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FENG XUE; and CALCULUS TRADING
TECHNOLOGY, LLC,

                     Plaintiffs,

  -against-

STEWART KOENIG; and PRIME CONSULTING
INTERNATIONAL, LLC,

                     Defendants.

No. 19 Civ. 07630 (NSR)
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

    Stewart Koenig and Prime Consulting International, L.L.C ("PCI", and, collectively "Defendants") move, pursuant to Fed. R. Civ. P. 54(b) and Local Rule 6.3, for reconsideration of the Court's September 14, 2022 Opinion & Order (ECF No. 78). (*See* ECF No. 84.) Feng Xue ("Xue") and Calculus Trading, LLC ("Calculus") (collectively, "Plaintiffs") oppose Defendants' motion for reconsideration. (ECF No. 89.) For the following reasons, Defendants' motion for reconsideration is DENIED.

## BACKGROUND

    This action concerns a wage dispute between Xue, a software engineer, who received employment with a third party through Koenig's staffing agency, PCI. (Compl., ECF No. 1.) The parties worked together for over twelve years, until December 2017. At that time, parties disputed the wages owed to Xue.

    On August 15, 2019, Plaintiffs Calculus and Xue commenced the instant action. (ECF No. 1.) On October 25, 2019, PCI and Koenig answered by filing of affirmative defenses and

counterclaims sounding in tort and contract law. ("Counterclaims", ECF No. 9.) Defendants PCI and Koenig asserted in their counterclaims that Plaintiffs breached three out of the four contracts the parties entered throughout their 2005-2017 relationship, by either (1) initiating FLSA claims in this action; or (2) leveraging the specter of FLSA violations to take one of Defendants' clients, namely BNY-Cowen. (*Id*.)

Defendants later moved to dismiss Plaintiffs' FLSA claims for lack of subject matter jurisdiction and for summary judgment, respectively under Federal Rules of Civil Procedure 12(b)(1) and 56 (ECF Nos. 49-57), while Plaintiffs moved to dismiss Defendants' amended counterclaims (ECF Nos. 72-76). On September 14, 2022, the Court denied Defendants' motions to dismiss Plaintiff's FLSA claims for lack of subject matter jurisdiction and for summary judgment and granted Plaintiffs' motion to dismiss Defendants' amended counterclaims.

## LEGAL STANDARD

"The standard for granting a motion for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298, 311-12 (S.D.N.Y. 2012) (internal citation omitted); *accord Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). Common grounds for reconsideration include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted). "[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly." *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal citation omitted); *see In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 298,

300 (S.D.N.Y. 2005) (noting that reconsideration should be used sparingly "in the interests of finality and conservation of scarce judicial resources"). The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court ." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009).

**DISCUSSION**

The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "In light of the definition's circularity, courts have endeavored to distinguish between employees and independent contractors based on factors crafted to shed light on the underlying economic reality of the relationship." *Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017). Accordingly, in *Brock v. Superior Care, Inc.*, the Second Circuit enumerated five factors that bear on whether workers are employees or independent contractors: "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business." 840 F.2d 1054, 1058–59 (2d Cir. 1988). The "ultimate concern" behind these factors "is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves." *Id.* at 1059.

The Court previously found that Plaintiffs produced sufficient evidence to demonstrate that Xue was an employee of PCI within the meaning of FLSA. (ECF No. 78 at 10.) Defendants now urge this Court to reconsider that ruling based on documentary proof, purportedly previously overlooked by the Court, that Xue elected to be treated as an independent contractor in his tax returns as well as a federal loan application. (Defendants' Memorandum of Law in Support of their

3

Motion ("Defs.' MOL) at 1.) The Court reconsiders each *Superior Care* factor in turn in light of this allegedly overlooked evidence.

With regard to the first *Superior Care* factor, the Court previously enumerated numerous indicia of Defendants' control over Xue, such as the fact that (1) PCI dictated Xue's initial hourly wage (Koenig June 24, 2005 email, ECF No. 50-7); (2) PCI set the terms of Xue's initial six-month "try" period (*id.*); (3) PCI required Xue to submit to PCI weekly hour report and Xue continued to do so over the course of the parties' relationship (*id.*; Xue Affirmation Ex. C, ECF No. 53); and (4) PCI retained its ability to unilaterally raise Xue's hourly wage in 2016, towards the end of the parties' relationship (Koenig July 29, 2016 email, Xue Affirmation Ex. C, ECF No. 53). Defendants contend, however, that Xue controlled his manner of pay by electing to establish "a limited liability company, Calculus, and leveraging his position as an employee of the company he established to have a contractual relationship with PCI, Calculus, which issued W-2s to Xue, so as to minimize his tax obligations." (Defs' MOL at 9 (emphasis omitted).) Courts in the Second Circuit have found the fact that a Plaintiff received tax benefits associated with independent contractor status relevant to the *Superior Care* analysis. *See, e.g. Browning v. Ceva Freight, LLC,* 885 F. Supp. 2d 590, 607 (E.D.N.Y. 2012). However, "[t]he law in this Circuit states that *electing* 1099 status does 'tend to show that Plaintiff understood himself to be an independent contractor and sought to obtain the financial advantages of that characterization when filing his tax returns.'" *Cox v. German Kitchen Ctr. LLC*, No. 17CIV6081GBDJW, 2023 WL 8648839, at *8 (S.D.N.Y. Dec. 14, 2023) (citation omitted) (emphasis added). Here, Xue did not *elect* 1099 status – the "corp. to corp." arrangement between the parties *required* Xue to "subcontract to our firm PCI which will pay you as 1099 Employee" (Koenig June 24, 2005 email, ECF No. 50-7.) As such, "the fact that Defendants prepared 1099 Forms indicating that [Xue] received non-employee

4

compensation is not particularly significant." *Kinney v. Artist & Brand Agency LLC*, No. 13CV8864 (LAK) (DF), 2015 WL 10714080, at *18 (S.D.N.Y. Nov. 25, 2015), *report and recommendation adopted*, No. 13-CV-8864 (LAK), 2016 WL 1643876 (S.D.N.Y. Apr. 22, 2016). Defendants' decision to label Xue an independent contractor and afford him the corresponding tax status, even if that arrangement benefitted Xue, does not remove Xue from the ambit of FLSA protection. This fact certainly carries some weight in Defendants' favor, *Kinney*, 2015 WL 10714080, at *18, but not enough to outweigh the other indicia of control previously identified by the Court in tipping this factor in Xue's favor.

In assessing the second *Superior Care* factor, the Court previously noted that Xue invested but "labor itself" in Calculus. (ECF No. 78 at 12.) To rebut this finding, Defendants make two arguments drawing on the allegedly overlooked evidence: (1) Xue was able to realize tax extraordinary tax benefits that never would have been available to him if he were a PCI employee; and (2) Xue worked as a manager for and earned income from a separate company, Queens Auto Parts. (Defs.' Mol at 11.) "In assessing the second *Superior Care* factor – which focuses on 'the workers' opportunity for profit or loss and their investment in the business,' *Superior Care*, 840 F.2d at 1058 – we consider whether workers have 'control over essential determinants of profits in the business,'" including whether a worker made large capital expenditures. *Franze v. Bimbo Bakeries USA, Inc.*, 826 F. App'x 74, 77 (2d Cir. 2020) (internal citation omitted).

Defendants make much ado of the fact that Xue earned over $400,000 earnings, remitted to him through Calculus, over the years of the parties' relationship, and that he took deductions of $892,228 during those same years (Defs.' MOL at 11), but Xue's income and tax benefits are not capital expenditures of the kind that courts in the Second Circuit have previously found to indicate that the workers invested in their own business. For example, in *Franze v. Bimbo Bakeries USA,*

5

*Inc.*, a case relied upon by Defendants, the Second Circuit denied workers employee status under the FLSA because they "made significant investments [$148,000 and $98,034] in, and had ample opportunity to profit from or lose money on, their businesses." 826 F. App'x at 77. Likewise, in *Saleem v. Corp. Transportation Grp., Ltd.*, the Second Circuit found that workers who invested in "vehicle acquisition, fuel, repair, and maintenance, license, registration, and insurance fees, and tolls, parking, and tickets...created the platform for a black-car business that could be operated throughout the tri-state area, whether for Defendants or otherwise, again suggesting Plaintiffs were independent contractors, and not employees." 854 F.3d at 144–46. By contrast, here, Xue's purported "expenditures" were merely the remittance of his wages back to himself.

The Defendants' second argument for this factor fares better. It is true that "when an individual is able to draw income through work for others, he is less economically dependent on his putative employer. This lack of control, while not dispositive, weighs in favor of independent contractor status." *Id.* at 141-42. But, as the Second Circuit has previously explained, "employees may work for more than one employer without losing their benefits under the FLSA...Nor has the fact that the worker does not rely on the employer for his primary source of income require a finding of independent contractor status." *Superior Care, Inc.*, 840 F.2d at 1060. The fact of Xue's additional employment weighs in Defendants' favor.

The third factor concerns Xue's skill. Defendants reiterate their argument, made on the original motion, that Xue was a highly skilled worker. (Defs.' MOL at 12.) This factor does not depend on any allegedly overlooked evidence, and so the Court does not disturb its original finding that though software engineers such as Xue are skilled workers of specialized training, nothing in the record indicates Xue "used these skills in any independent way." *Superior Care, Inc.,* 840 F.2d at 1060. This factor remains in Xue's favor.

6

The fourth factor respects the duration and permanence of the parties' relationship. Defendants appear to confuse the focus of this factor, arguing again that Xue benefited from being classified for tax purposes as an independent contractor. (Defs.' MOL at 12.) But this factor does not concern Xue's purported benefits – it only concerns the length of Xue's work for Defendants, which was over 12 years. (Koenig Decl., ECF No. 50; Xue Affirmation, ECF No. 53.) This factor remains weighed in Xue's favor.

Finally, Defendants concede that "[t]he overlooked proof discussed above does not bear on" the fifth factor, which concerns the extent to which Xue's work was an integral part of PCI's business. (Defs.' MOL at 13.) The Court agrees, and declines to consider Defendants' re-raising of their already rejected arguments. The Court adheres to its previous finding that "the services rendered by [Xue] constituted the most integral part of [PCI's] business, which is to provide [IT experts] on request." *Brock*, 840 F.2d at 1059.

In sum, the allegedly overlooked evidence only adds one point in Defendants' favor – that Xue was able to draw income from another form of employment while working for Defendants. This one factor, however, is neither dispositive nor able to outweigh all of the other factors which favor Xue. The Court has reviewed the documents referenced by Defendants, and the documents do not individually or collectively change the Courts' previous analysis. Accordingly, the Court declines to reconsider its decision to deny Defendants' motions for summary judgment and to dismiss for lack of subject matter jurisdiction, as well as grant Plaintiffs' motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration is DENIED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 84. The parties are directed to notify Judge Krause of this Opinion and contact Judge Krause's chambers to schedule a

7

conference.

Dated: March 31, 2024
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge